HAGLER *v.* ARKANSAS COUNTY.

Opinion delivered January 30, 1928.

1. COUNTIES—TRANSFER OF SURPLUS IN BOND ACCOUNT TO GENERAL REVENUE.—Where the county issued bonds under Amendment 11 to cover indebtedness existing prior to October 7, 1924, but county warrants dated prior to that date were accepted in payment of taxes prior to the receipt of bond money, resulting in a surplus in the bond account, *held* under Acts 1927, p. 86, that such surplus was properly transferred to the county general account.

2. COUNTIES—COUNTY WARRANTS PAYABLE FOR COUNTY TAXES.—When county warrants are presented, they must be accepted in payment of county taxes.

3. COUNTIES—INDEBTEDNESS PAYABLE FROM BOND ISSUE.—Under Acts 1927, p. 591, a county which issued bonds to pay indebtedness existing prior to October 7, 1924, was entitled to pay any indebtedness existing prior to December 7, 1924, from the surplus bond account or to have a supplemental bond issue to take up such indebtedness if the funds in the surplus bond account are insufficient.

Appeal from Arkansas Circuit Court, Southern District; *W. J. Waggoner,* Judge; reversed.

*Peyton Moncrief* and *A. G. Meehan,* for appellant.

*J. M. Brice,* for appellee.

McHANEY, J. On June 27, 1927, the county judge of Arkansas County issued a citation to appellant, John L. Hagler, county treasurer, directing him to appear on the first day of the next term of the county court, which was July 4, and show cause why an order should not be made by the court requiring him, as treasurer, to transfer the

surplus funds in the bond account to the county general account. The county treasurer appeared on that day, in obedience to the citation, and filed a response, stating that, under Amendment No. 11, and by order of the county court, Arkansas County had issued bonds, under date of May 1, 1925, to cover indebtedness existing prior to October 7, 1924, in the sum of $85,000; that a premium of $250 was paid by the bond purchasers for the issue, plus accrued interest from May 1, 1925, the date of the bonds, to June 15, 1925, the date of receipt of the funds, in the sum of $531.25, making a total amount received on the sale of the bonds in the sum of $85,781.25; that, out of said funds, county warrants dated prior to October 7, 1924, were taken up and canceled in the total sum of $63,925.36, which left a balance on hand from the original bond issue of $21,855.89, on which he had received interest from the depository banks from June 15, 1925, to June 1, 1927, in the sum of $1,918.71, making a total on hand at the time of his response of $23,774.60 to the credit of the surplus bond account.

He further alleged that the county collector had received in payment of county taxes, during the first and second quarters of 1925, county warrants which had been issued prior to October 7, 1924, in the sum of $20,255.98, which had been turned in by the collector to the treasurer on settlement presented to the county court on the regular quarterly settlements, and canceled by the order of the county court, and the treasurer credited with the payment of same. He further alleged that, had the county court held up the cancellation of the said warrants in the sum of $20,255.98, which had been received by the collector in payment of county taxes as aforesaid, the said warrants could and would have been paid out of the bond account, and not out of the county general funds, as was done by reason of the cancellation of same before the treasurer had received the bond money from the sale of bonds, as aforesaid, and that, as a result thereof, there was to the credit of the bond account a surplus of $23,774.60, with accrued interest to June 1, 1927.

He further alleged that act 30 of the Acts of 1927, approved February 23, 1927, is unconstitutional and void, and that therefore the county court had no authority to order him, as treasurer, to transfer said surplus funds from the bond account to the county general account. Whereupon the county court made and entered an order, which will be hereafter found embodied in the order of the circuit court, requiring appellant to transfer the surplus in the bond account to the county general account. An appeal was duly prosecuted to the circuit court, and, on a hearing, that court rendered the following judgment:

"On this the 6th day of July, 1927, a judicial day of the regular July term of said court, this cause coming on to be heard, and the appellant, John L. Hagler, as county treasurer of Arkansas County, Arkansas, appears in person, and the appellee, Arkansas County, by its county judge, J. R. Parker, and J. M. Brice, employed as special counsel by the county judge, and Guy E. Williams, prosecuting attorney, appear, and both sides announce ready for trial, and, by agreement of both sides, this cause is submitted to the court without the intervention of a jury, upon the pleadings filed in the county court and the order of the county court, from which appellant has prosecuted this appeal, and other testimony, and the court finds that the county court made an order requiring the appellant, as county treasurer, to transfer the surplus proceeds arising from the sale of county bonds from the bond account to the county general account, which order of the county court, omitting the caption, reads as follows:

"'The matter of making an order transferring certain surplus funds now in the bond account to the county general account coming on to be heard, and it appearing that the county treasurer, John L. Hagler, has been given written notice of this matter, and has entered his appearance herein, and filed a verified response, it is submitted, upon said notice and the response of said treasurer, and other evidence adduced at this hearing, and the court

finds: That a bond issue was made under date of May 1, 1925, for Arkansas County, Arkansas, in the sum of $85,000, and that on June 15, 1925, the treasurer of said county and State received the proceeds from sale of said bonds in the sum of $85,000, plus premium of $250, and accrued interest up to June 15, 1925, of $531.21, totaling the sum of $85,781.25, and further finds that the purpose of this bond issue and sale was to pay off the indebtedness of the county as evidenced by county warrants issued prior to October 7, 1924, and claims allowed by the court prior to the 7th day of October, 1924. The court also finds that county warrants which were dated before October 7, 1924, were paid from the bond account and canceled at various cancellations in the total sum of $63,-925.36, and that on June 1, 1925, there remained in the treasury to the credit of the bond account the sum of $21,855.89, plus accrued interest of $1,918.71, totaling the said sum to the bond account in the sum of $23,774.60, and that there were no other outstanding county warrants against this bond account. The court further finds that the county treasurer had received from the collector, W. C. Woodson, during the first and second quarters of 1925, in settlements, county warrants which were issued prior to October 7, 1924, in the total sum of $20,774.98, and that the county treasurer turned these warrants in on quarterly settlements, before receiving the money from sale of bonds, and the warrants were by the county judge or county court canceled and the treasurer given credit therefor, and that these warrants during the first and second quarters paid out of the general fund or account; and that there are now no outstanding county warrants issued prior to October 7, 1924, against the bond account, all having been canceled, or barred on June 4, 1926, under call of county court dated March 2, 1926. The court finds that, under act No. 30 of the General Assembly of 1927, approved February 23, 1927, this sum of $23,774.60, including interest to June 1, 1927, together with interest which has accrued since June 1, 1927, and under the law should be transferred from the bond

account to the county general account, and the county reimbursed. The court finds that the findings of facts herein are in accord with the response of the county treasurer of Arkansas County, but that the county treasurer, John L. Hagler, denies that the court has the authority, under said act No. 30 of the Acts of the General Assembly of 1927, or under any law, to order him to transfer said funds from the bond account to the general funds of the county. Wherefore it is considered, ordered and adjudged by the court that the $23,774.60, with daily balance interest from June 1, 1927, should be transferred from the bond account to the county general account or fund, and that the county treasurer, John L. Hagler, is hereby directed and commanded to transfer said $23,774.60, with daily balance interest from June 1, 1927, to the county general account fund.'

"There was no oral testimony adduced on either side on the trial of the case in this court, but that the court finds, from the pleadings and the verified response of John L. Hagler, filed in the county court, that the findings of the facts of the county court are correct, and adopts the findings of the county court as set out in the foregoing order of the county court as correct and as the findings of this court, and finds that, under act No. 30 of the General Assembly of Arkansas of 1927, approved February 23, 1927, the sum of $23,774.60, including interest to June 1, 1927, together with interest which has accrued since June 1, 1927, under the law should be transferred from the bond account to the county general account, and the county reimbursed.

"Wherefore it is considered, ordered and adjudged by the court that the $23,774.60, with interest from June 1, 1927, should be transferred from the bond account to the county general account or fund, and that the county treasurer, John L. Hagler, is hereby directed and commanded to transfer said sum of $23,774.60, with interest from June 1, 1927, to the county general fund or account.

"It is further considered, ordered and adjudged that the clerk of this court shall certify down to the

county court and the clerk of the county court the order and judgment of this court herein, and the county court is directed and commanded to adopt the order and judgment of this court as its own."

The county treasurer has brought the case to this court for final consideration.

Authority for the action of both the county and circuit courts in making their respective orders is found in act No. 30, Acts 1927, page 86, the title and first section thereof being as follows:

"An act to provide for the relief of all counties in this State which have issued and sold bonds under the provisions of Amendment No. 11, and have erroneously paid some of the indebtedness for which said bonds were sold out of the general revenues for said counties and now have a surplus in said bond account, and for other purposes.

"Section 1. That in all counties in this State which have funded their indebtedness by means of issuing bonds under the provisions of Amendment No. 11, and, after paying said indebtedness, a surplus remains in said bond account, the county court of each county is hereby authorized, upon a finding that any part of the indebtedness existing December 7, 1924, had been erroneously paid out of the general revenues of said county when same should have been paid out of the funds derived from the sale of said bonds, to make an order allowing said amount so erroneously paid as a charge against the bond account, and credit the county general fund of said county with said amount so erroneously paid and charged by order of said court to said bond account. That, in each county where funding bonds have been issued by the county court under Amendment 11, the county treasurer shall promptly remit to the banks designated in the court order authorizing the issuance and sale of such bonds on dates due, the interest and principal from funds collected for this purpose."

The second and third sections of this act are the repealing and emergency clauses, a part of the latter

stating the real emergency, being: "because of the fact that, in all those counties having said surplus caused by the erroneous payment of the outstanding indebtedness out of the general revenue funds of the county for that year, said county will be deprived of sufficient moneys to take care of their current expenses, and be deprived of the use of said moneys in said bond account. This act, account of said emergency, to take effect and be in force from and immediately after its passage."

This holding of the county and circuit courts would appear to be in conflict with the decision of this court in *Airheart* v. *Winfree,* 170 Ark. 1126, 282 S. W. 963, where this court said:

"The principal argument of counsel for appellant is that, since the declared purpose of Amendment No. 11, as construed in *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782, was to enable the counties of the State to 'get out of debt,' as long as the county continues to be in debt after the adoption of the amendment the authority to issue bonds continues, and that it extends to the maximum amount of the outstanding indebtedness at the time of the adoption of the amendment, and includes warrants issued subsequent thereto, even though the amount of the old indebtedness has been reduced by payments out of the general revenue funds of the county. In other words, it is contended that, since the amount of the old indebtedness was borrowed and the old indebtedness has been reduced since the adoption of the amendment from an aggregate of $38,337.48 down to $10,857.49, the remainder of the funds should be used in retiring warrants issued subsequent to the adoption of the amendment. We cannot agree with counsel in this argument, for we think it disregards the plain language of the Constitution, as amended, which limits the issuance of bonds to the procurement of funds 'to pay indebtedness outstanding at the time of the adoption of this amendment,' and declares that it shall be a felony for any officer to 'use any part of the proceeds of said bonds for any other purpose' than the payment of such indebtedness. It is not

the amount of the indebtedness at the time of the adoption of the amendment which necessarily determines the amount of the bond issue, for that is determined solely by the amount of the old indebtedness.in existence at the time the money is borrowed and the bonds are issued. As long as the old indebtedness exists, the Constitution authorizes the borrowing of money to pay off that indebtedness, or so much of it as is in existence at the time the bonds are issued. If the old indebtedness has been reduced by payments out of funds of the county, then the authority to issue bonds is limited to the amount of the old indebtedness which remains unpaid. Counsel seek, in the argument, to treat the warrants subsequently issued as in the nature of a renewal of the old indebtedness, for the reason that the latter has been reduced by the payment of funds out of the general revenues, but we are of the opinion that warrants subsequently issued are in no sense a renewal of the old indebtedness. The payment operated as a complete retirement of the old indebtedness to that extent, even though paid out of the general revenues of the county. It must be conceded that the county court had the authority, at the time of the issuance of the bonds, to determine the amount of the old indebtedness, and if, in the meantime, there had been a reissue of warrants, which evidenced the old indebtedness, it was within the province of the county court to include the reissued warrants as a part of the old indebtedness. In other words, the county court has authority to look to the form to ascertain the substance in regard to the amount of the old indebtedness. But it is not shown that the indebtedness represented by appellant's warrant was a part of the indebtedness of the county at the time of the adoption of the amendment, therefore it is not, either in form or substance, such a claim against the county as can be paid out of funds arising from the sale of bonds.

"Counsel for appellant suggest in the argument that perplexities may arise with regard to the disposition of the surplus fund borrowed by the county, if we

hold that it cannot be used in the payment of warrants subsequently issued, but that question is not presented in the present case. The holders of the bonds are not parties to the suit, and we are not called on to determine whether or not they can be required to accept a refund of the unexpended balance in the treasury in payment of the bonds prior to maturity. All that we can decide now is that, under the plain language of the Constitution, the funds cannot be used for any purpose other than the discharge of indebtedness outstanding at the time of the adoption of the amendment.''

At the time the above decision was rendered, the Legislature had not spoken on this matter, as heretofore set out in act 30 of 1927, and a majority of this court have reached the conclusion, after very mature deliberation, that, in the light of said act 30, it is better to indulge the presumption of law that the act is constitutional and overrule, if necessary, the decision in *Airheart* v. *Winfree,* than to hold the act unconstitutional and void. *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9, and cases cited.

The decision in that case was not the unanimous opinion of the court, Mr. Justice SMITH writing a vigorous dissent and setting out arguments against it which we now believe to be unanswerable. In addition to what was there stated, it may be further said that the county judge of Arkansas County, and undoubtedly of other counties, thought Amendment No. 11 meant exactly what it said, and that was that he was authorized to issue bonds ''to pay indebtedness outstanding at the time of the adoption of this amendment,'' and not indebtedness outstanding at the time the bonds were issued and paid for. It was not finally determined that the amendment had been adopted until the decision of this court in *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865, February 16, 1925, and it was not definitely and certainly ascertained on what date the amendment became effective, whether October 7 or December 7, 1924, until the decision of this court in *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22, November 23, 1925, where it was held

that Amendment No. 11 went into effect on December 7, 1924, and that bonds might be issued for "indebtedness outstanding" on December 7, 1924. So the several county courts were not advised, prior to February 16, 1925, that they had any authority to issue bonds, and did not know, prior to November 23, 1925, as to the exact amount of indebtedness for which bonds might be issued. Arkansas County took the safe course, and issued bonds to cover debts outstanding to October 7, 1924. Then the enabling act, act No. 210 of 1925, p. 608, requires an order of the county court declaring the total amount of its debts, and publication of such order for one insertion, after which any property owner has thirty days to bring a suit to review the correctness of such order, and thirty days more in which to appeal to this court after an adverse decision. Necessarily, it was contemplated that a considerable period of time might elapse before the county judges knew exactly what they could do. In the meantime outstanding warrants were presented to the collector in payment of taxes. He had no right to refuse them. County warrants must be accepted in payment of county taxes, and the collector of Arkansas County accepted in payment of taxes $20,255.98 of such warrants prior to the receipt of the bond money on June 15, 1925. Suppose, for example, this sum of money had been the total outstanding indebtedness of Arkansas County. Under this construction in the Airhart case, it could not issue any bonds, and would be in no better financial condition than it was before. The Legislature, by act 30 of 1927, has found that this payment of the warrants outstanding on December 7, 1924, from the county general fund, was erroneously paid from such fund instead of the bond fund, and correctly so. It was not only a mistake of law, but of fact. Having erred, we think they should be permitted to correct it by crediting the county general fund with the surplus. In the view of the majority, *Airheart* v. *Winfree* should be overruled and the act sustained.

By the decision of this court in *Matheny* v. *Independence County, supra,* it was held that Amendment No. 11 became effective on December 7, 1924, instead of October 7, as the county judge of Arkansas County, and perhaps of other counties, erroneously thought. To correct this error, the Legislature of 1927 passed act 165, Acts of 1927, p. 591, the first section of which reads as follows:

"The county treasurers of those counties that have heretofore issued and sold bonds, and which still have on hand the proceeds or a portion of the proceeds from the sale of such bonds, are hereby authorized and empowered to use such funds in paying warrants and other legal evidence of indebtedness issued for or on account of indebtedness made or existing to the 7th day of December, 1924, irrespective of the fact that the proceedings or orders providing for the issuance of such bonds may or do provide that the proceeds from such bonds, or the issuance or sale thereof, are to be used or employed in payment of indebtedness made or existing to October 7, 1924, or any other date, or to such date or any other date only."

By virtue of authority of this act, it is the opinion of this court that Arkansas County may lawfully pay, from its surplus bond account, any indebtedness existing prior to December 7, 1924, or might yet have a supplemental bond issue to take up the indebtedness existing on December 7, 1924, if the funds in the surplus bond account are insufficient to cover said indebtedness. The plain mandate of the Constitution as amended was to authorize the counties to get out of debt and to stay out of debt. And it is apparent that the only way that many of them can do this is to take up all indebtedness existing at the time Amendment No. 11 became effective, by a bond issue, to be retired by the levying of a tax not to exceed three mills for this purpose, in addition to the general county levy for county purposes.

The judgment of the circuit court is accordingly affirmed.