STAHL *v.* SIBECK.

Opinion delivered June 29, 1931.

1144

*Carl E. Bailey,* for appellant.

*Neil Bohlinger, Owens & Ehrman* and *Donham & Fulk,* for appellee.

*Carmichael & Hendricks* and *B. H. Charles* and *Carl Trauernicht, amici curiae.*

McHANEY, J.  Proceeding under what is generally known as Amendment No. 11, correctly designated as No. 8 in Applegate's Constitution of Arkansas, and under the enabling act, 210 of 1925, the then county judge of Pulaski County took the necessary steps to issue bonds to refund the county's indebtedness existing on October 7, 1924, the supposed date of the adoption of said amendment.  Subsequently this court held the amendment was adopted and became effective on December 7, 1924. *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22.  Thereafter, in July, 1925, the county court ascertained and adjudicated the county's indebtedness to be $350,000 as of October 7, and entered a judgment or order to this effect.  The court failed to include such indebtedness, if any, accruing and existing between October 7 and December 7, 1924, which amount is said to be $30,840.89 and expressly excepted certain (contingent at that time) indebtedness consisting of four claims filed against the county road fund which was found to be $95,376.50, and certain county road district warrants found to amount to $14,953.  Bonds were thereafter issued in the sum of $350,000 for the purpose of paying the county's debts and was used for this purpose, which, together with annual current revenue since, has retired

all debts existing at December 7, 1924, and indebtedness accruing thereafter.

In February, 1931, proceedings were initiated by appellee, the present county judge, to have a supplemental bond issue for said county, on the theory that the former county judge had erroneously and incorrectly determined the indebtedness to be $350,000 as of October 7, 1924, whereas the correct indebtedness as of December 7, 1924, was $646,012.65, which left a balance of debts as of that date in the sum of $296,012.65. In April following, $296,000 in bonds were issued pursuant to the order of the county court. They were sold at par for 6 per cent. bonds to be converted into 4¾ per cent. bonds at the election of the buyer, and $325,000 in bonds were actually issued at 4¾ per cent., for which the county received $296,000, and which is now on deposit with the county treasurer, appellant. The above sum included an old bond issue of $66,000 and accrued interest of $1,287, which is conceded to be erroneous, and which was eliminated by the circuit court.

This controversy arises over the proper distribution of the proceeds in the treasurer's hands, and other parties, citizens and taxpayers, have intervened and attack the whole proceedings for the supplemental bond issue. The circuit court held the bond issue valid in part, and from such judgment this appeal is prosecuted.

Counsel for appellee seek to sustain the procedure on the authority of *Hagler* v. *Arkansas County,* 176 Ark. 115, 2 S. W. (2d) 5, but there is a wide dissimilarity in the two cases. There we were dealing with the surplus fund in the bond account resulting from an acceptance of warrants outstanding on October 7, 1924, in payment of county taxes, and the cancellation thereof prior to receipt of the bond money covering said warrants. In other words, the county court had made an order adjudging the amount of indebtedness of Arkansas County as of October 7, 1924, which included outstanding warrants that were accepted in payment of county taxes by the collector

which had been turned in by the collector to the treasurer on settlement approved by the county court, canceled and the treasurer given credit therefor. This created a surplus in the bond account which the county court desired transferred to the county general fund. We held properly that this could be done under act 30, Acts 1927, p. 86. We also held, under act 165 of 1927, p. 591, that a county which had issued bonds to cover debts to October 7, 1924, was authorized to pay any debts to December 7, 1924, from the surplus bond account, or might have a supplemental bond issue to cover the debts incurred between October 7 and December 7, if the surplus bond account was insufficient to cover the difference. That is a vastly different proposition from what is sought to be done in this case. Here the county court is attempting to set aside its previous order solemnly adjudicating the total debts of Pulaski County as of October 7, 1924, on the ground that the court made a mistake in the amount of the indebtedness, in the very teeth of the provisions of § 1 of the enabling act, No. 210 of 1925, p. 608. This section of the act provides that: ''The county court shall, by order entered upon its records, declare the total amount of such indebtedness.'' It is then provided that such order shall be published, etc.; ''and any property owner who is dissatisfied may, by suit in the chancery court of the county brought within thirty days after the publication of such order, * * * have a review of the correctness of the finding made in such order, * * *; but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack * * *. If any officer of such county, * * * shall wilfully make any false statement as to the amount of its indebtedness, he shall forfeit his office and be ineligible to hold any other office of profit or trust in this State.''

The order of the county court in 1925 found that the county was indebted in the sum of $350,000. No person brought any suit to review the finding within the time

limited, and it thereupon became "conclusive of the total amount of such indebtedness, and not open to further attack," and is *res judicata*. The order of 1925, having become conclusive and not open to further attack after 30 days from its publication, exhausted all the power of the county court thereafter to issue bonds under amendment No. 8 and under act 120 of 1925, adopted pursuant thereto. Otherwise, the county courts could continue to issue bonds as often as they were able to find auditors who could discover additional indebtedness existing at the time of the adoption of the amendment. Only one bond issue was intended, and the supplemental bond issue mentioned in the Hagler case referred to the possibility of correcting a mistake of law, as to when the amendment was adopted, and not one of fact, as to the amount of indebtedness.

It is contended on behalf of appellee that the question of the validity of this bond issue is not properly before this court, and that such attack is purely collateral. But the question is here—the question of the jurisdiction of the court and therefore the validity of the judgment. As we have already shown, the county court exhausted its jurisdiction, its power and authority by the order of 1925. The county court therefore had no jurisdiction to make the order in question, and it is void. A void judgment is always open to attack, either direct or collateral.

As to the rights of bondholders, we hold that they are not necessary parties to this controversy. It appears that the total purchase price of the bonds is held in the county treasury, and they may therefore receive back their money on surrender and cancellation of said bonds illegally issued.

We do not deem it necessary to discuss all the questions raised in the briefs of counsel, as we have reached the conclusion, on the grounds stated, that the proceedings for the issuance of $296,000 in supplemental bonds are *coram non judice* and void, and that the judgment

of the circuit court be reversed, and the cause remanded with directions to enter a judgment in accordance with this opinion, and that same be certified to the county court to be there entered upon its records.

It is so ordered.