CASKEY *v.* HOLMES.

4-3772

Opinion delivered January 14, 1935.

*Glen H. Wimmer,* for appellant.

*Q. E. McCuin* and *Charles B. Thweatt,* for appellee.

MEHAFFY, J. In 1924 amendment No. 10 to the Constitution of the State of Arkansas was adopted. That amendment states in the beginning that the fiscal affairs of the counties, cities and incorporated towns shall be conducted on a sound financial basis. It then prohibits any contract or allowance in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made. The amendment, however, has this

provision: "Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax, in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law, until such indebtedness is paid."

The Legislature of 1925 passed an act, the purpose of which was to facilitate the funding of the debts of counties, cities and incorporated towns. Among other things, said act provides that, before a county shall issue bonds under the act, the county court shall, by order entered upon its record, declare the total amount of such indebtedness. That means indebtedness, the payment of which is authorized by amendment No. 10; that is, indebtedness outstanding at the time of the adoption of the amendment.

On July 5, 1927, the county court of Prairie County entered and published the following order:

"Order Ascertaining the Indebtedness of Prairie County, Arkansas, at the Time of the Adoption of Amendment No. 11 to the State Constitution on October 7, 1924.

" 'It is hereby ascertained and declared by the court that the indebtedness of Prairie County, Arkansas, existing at the time of the adoption of amendment No. 11 to the State Constitution, which said amendment was adopted at the general election on October 7, 1924, and became effective December 6, 1924, was the sum of twenty-five thousand dollars.

" 'It is further ordered that a copy of this order be published immediately for one insertion in some newspaper published in the county.

" 'This 5th day of July, 1927, the same being an adjourned date of the regular July, 1927, term of the county court of Prairie County, Arkansas.'

"Geo. W. Craig,

"County Judge of Prairie County, Arkansas."

On November 7, 1934, the county court of Prairie County entered and published the following order:

"Order Declaring the Total Amount of Indebtedness of Prairie County, Arkansas, Outstanding on December 7, 1924.

" 'It is hereby ascertained and declared by the Prairie County Court that the total amount of the indebtedness of Prairie County, Arkansas, outstanding on December 7, 1924, was the sum of $40,000; that the indebtedness of said county on October 7, 1924, as found by the former order of this court, rendered July 5, 1927, and recorded in county court record book "V" at page 60, was $25,-000; that there accrued additional indebtedness from October 8, 1924, to December 7, 1924, in the sum of $15,000, making said total indebtedness of said county on December 7, 1924, said sum of $40,000.

" 'It is further ordered that a copy of this order be published immediately for one insertion in some newspaper published in Prairie County, Arkansas.

" 'This 7th day of November, 1934, being an adjourned day of the regular October, 1934, term of the Prairie County Court.'

"Jeff J. Holmes,

"County Judge of Prairie County, Arkansas."

The act above referred to, Acts of 1925, page 608, provides that any property owner who is dissatisfied with the order of the county court may bring suit in the chancery court within 30 days after the publication of the order, and have the correctness of the finding of the county court reviewed.

The appellant, on November 14, 1934, filed this suit in the Prairie Chancery Court, alleging that the last order above copied was void, and asked that it be canceled and set aside, and that the defendant county judge be enjoined and restrained from issuing or selling any bonds to fund any part of the indebtedness of Prairie County incurred between October 7, 1924, and December 7, 1924.

The appellee filed a demurrer, which was sustained by the court, and the appellant elected to stand on his complaint, declined to plead further, and the court thereupon dismissed his complaint, and he prosecuted this appeal to reverse the decree of the lower court.

We think that the caption of the first order shows clearly that the court ascertained the indebtedness of the county that existed on October 7, 1924. The order made expressly states that the indebtedness ascertained of the county was the indebtedness existing at the time of the adoption of the amendment, and that said amendment was adopted at the general election on October 7, 1924.

We think that it is manifest that, when the caption and order are considered together, the intention of the court was to ascertain the indebtedness existing on October 7, 1924, and that the court thought that that was the date of the adoption. It is true that the court stated in the order that the amendment did not become effective until December 6, 1924. But the amendment itself provides for the issuing of bonds to pay indebtedness outstanding at the time of the adoption of the amendment, and the court held that the adoption of the amendment was October 7, 1924.

It was discovered that under a decision of this court, the amendment was held to have been adopted on December 7, 1924, instead of October 7th, the date when it was approved by the electors.

It therefore seems perfectly clear that the county court simply made a mistake as to when the amendment was adopted. The second order recites the former order, and states that there had accrued indebtedness, between October 7th and December 7th, of $15,000, and this was not included in the original order.

It is contended by the appellant that the county court should have known and must be deemed conclusively to have known, when it made the first order, that the amendment was adopted December 7, 1924, because on November 23, 1925, this court handed down the opinion in the case of *Matheny* v. *Independence County*, in which this court held that the words used in the amendment, "at the time of the adoption," meant at the time the amendment went into operation, which was December 7, 1924. *Matheny* v. *Independence County*, 169 Ark. 925, 277 S. W. 22.

Whether or not the county court should have known that the amendment was adopted on December 7th, it did

not know this. We know that it did not because the order itself states that the amendment was adopted on October 7th, and the indebtedness is ascertained up to that time, and not to December 7th.

Appellant calls attention to *Stahl* v. *Sibeck,* 183 Ark. 1143, 40 S. W. (2d) 442. The court said in that case: "We also held under act 165 of 1927, page 591, that a county which had issued bonds to cover any debts to October 7, 1924, was authorized to pay any debts to December 7, 1924, from the surplus bond account, or might have a supplemental bond issue to cover the debts incurred between October 7th and December 7th, if the surplus bond account was insufficient to cover the difference."

We think the opinion in the Sibeck case clearly shows that supplemental bonds may be issued to pay indebtedness incurred between October 7th and December 7th. The court further said in the Sibeck case:

"That is a vastly different proposition from what is sought to be done in this case. Here the county court is attempting to set aside its previous order solemnly adjudicating the total debts of Pulaski County as to October 7, 1924, on the ground that the court made a mistake in the amount of the indebtedness, in the very teeth of the provisions of § 1 of the enabling act, No. 210 of 1925, p. 608."

The court in that case also said: "Only one bond issue was intended, and the supplemental bond issue mentioned in the Hagler case referred to the possibility of correcting a mistake of law, as to when the amendment was adopted, and not one of fact, as to the amount of indebtedness."

That is exactly the situation as to the instant case. It was correcting a mistake of law as to when the amendment was adopted, and not one of fact as to the amount of the indebtedness. The last order by the Prairie County Court shows conclusively that the court is not attempting to set aside its previous order, but it expressly finds that that was correct, and, in addition to that, finds that between October 7th and December 7th, indebtedness was incurred amounting to $15,000.

188

Appellant also refers to the case of *Berry* v. *Sale,* 184 Ark. 655, 43 S. W. (2d) 225. This opinion was handed down approximately five months after the opinion in the Sibeck case. In the case of *Berry* v. *Sale, supra,* the court said, referring to *Hagler* v. *Arkansas County,* 176 Ark 115, 2 S. W. (2d) 5:

"In that case, the court had under consideration an act of the Legislature of 1927, which was enacted to provide for the relief of all of the counties in the State which had issued and sold bonds under the provisions of amendment No. 10 to the Constitution, and which had originally paid some of the indebtedness for which said bonds were sold out of the revenues of said counties. This act authorized each county to make an order allowing amounts which had been originally paid out of the general revenue fund as a charge against the bond issue. This was held to be a relief against a mistake of fact which had occurred because it was first thought by the people of the State that amendment No. 8 became effective October 7, 1924, when, according to the holding of this court, it became effective on December 7, 1924. Amendment No. 10 gave the counties authority to issue bonds for funding their indebtedness which existed at the time of the adoption of the amendment. Consequently, the court said that a mistake of law and fact both had been made when the counties issued bonds to cover the outstanding indebtedness of October 7, 1924, instead of December 7th of that year. The Legislature of 1927 passed an act for the relief of these counties, and it was held that the indebtedness accruing between October 7th and December 7, 1924, might have also been included in the amount of the outstanding indebtedness at the time of the adoption of the amendment. Having been omitted from the bond issue by mistake, it was held that a supplementary bond issue might be made for the omitted part, or, in cases where payment had been out of the general revenue, such payment would be considered made under a mistake of fact and treated accordingly."

We think there is no doubt that the opinion in the Stahl v. Sibeck case approved the opinion in the *Hagler*

v. *Arkansas County* case, and very clearly distinguished the two cases.

Appellant also calls attention to the case of *Irwin* v. *Alexander*, 184 Ark. 572, 43 S. W. (2d) 85. The issue here was not involved in that case. We held in that case that bonds to take up courthouse indebtedness could not be issued under amendment No. 10 because at that time amendment No. 17 had been adopted, which provided the exclusive method of paying existing indebtedness for courthouses and jails, and we held that this amendment would have to be followed. The issues in the instant case were not involved in that case.

It therefore appears that this court has three times held that when a mistake was made as to the date of the adoption of the amendment, the county court fixing it at October 7th instead of December 7th, bonds may be issued to pay the indebtedness that accrued between October 7th and December 7th. One of the cases, as we have already said, was decided some months after the Sibeck case. There is no conflict in the decisions of the Hagler case, the Sibeck case, and the Berry case. Moreover, amendment No. 10 declared that the fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis. It prohibits any contract or allowance in excess of the revenue for the fiscal year. The evident purpose of the amendment was to enable counties to get out of debt and stay out of debt. Counties are authorized under this amendment to arrange for the payment of all indebtedness existing up to the time of the adoption of the amendment, and the amendment prohibits making any contract or allowance in excess of the revenue. In other words, it is clearly the intention of amendment No. 10 to enable counties to get out of debt, and thereafter prohibits them from contracting debts in excess of the revenue. The amendment enables them to get out of debt, and prevents them from contracting for any debt for which they have not sufficient revenue to pay.

The order of the county court attacked in this case did not undertake to set aside the former order, nor to change the finding of the court as to the amount of indebtedness ascertained in the first order; but the sole

purpose of the order attacked is to provide for the payment of indebtedness that existed between October 7th and December 7, 1924.

We think the decree of the chancery court is correct, and it is therefore affirmed.

SMITH, J., (dissenting). The effect of the cases cited in the majority opinion is that, where it appears that the county court attempted to refund its entire indebtedness by issuing bonds to pay it, but was under the mistaken opinion of law that the amendment authorizing the bond issue was adopted on October 7, 1924, and not on December 7th of that year, and had by reason of the mistake of law refunded only the indebtedness outstanding on the earlier date, the court might, when this mistake was discovered, order a supplementary bond issue covering the indebtedness due on the later date.

But these cases are also to the effect, particularly the case of *Stahl* v. *Sibeck,* 183 Ark. 1143, 40 S. W. (2d) 442, that, where the court, not laboring under a mistake of law, as to the extent of its power, elects to make an order finding the indebtedness as of October 7, 1924, or any other date, not later than December 7 of that year, covering what was thus ascertained and adjudged to be the whole amount of the indebtedness then outstanding and made appropriate orders for its refund through a bond issue, the power was exhausted; and could not subsequently be exercised, even though there was an increased indebtedness which had accrued after October 7, 1924, but prior to December 7 of that year. Such an order, as was said in the Sibeck case, *supra,* "became 'conclusive of the total amount of such indebtedness and not open to further attack' and is *res judicata";* for, as was there said, "otherwise the county courts could continue to issue bonds as often as they were able to find auditors who could discover additional indebtedness, existing at the time of the adoption of the amendment."

The very abuse there sought to be guarded against has occurred in the instant case. Such a discovery has been made. The original order in this case found that the "Amendment was adopted at the general election on

October 7, 1924, and became effective December 6, 1924," at which time the indebtedness of the county was $25,000.

The most that can be said in defense of the second order in the instant case is that the county contracted between October 7, 1924, and December 7 of that year, a period of two months, this additional indebtedness of $15,000. But that finding was not expressly made; and would be without effect if it had been made because the first order clearly manifests the purpose to refund all the indebtedness outstanding on October 7 and not another or later date. And it is equally as certain that this decision was not induced by any misapprehension as to the date of the adoption of the amendment, as occurred in other cases. It seems to me there can be no doubt of this, as the first county court order recites the fact that the amendment "became effective December 6, 1924." Now, there is a mistake of law in this order; and that is that the amendment became effective not on December 6, 1924, as there recited, but on December 7, 1924, one day later. There was no finding in the second order, nor is there any contention, that all or any part of the additional $15,000 indebtedness was incurred on December 6th.

Except as to this one day there was no mistake of law, and there is no showing as to what, if any, mistake of fact resulted from this mistake of law.

In other words the majority are now permitting the county judge of Prairie County to exercise a power which was denied Judge Sibeck, then county judge of Pulaski County. Judge Sibeck attempted, as the opinion in that case recites, in February, 1931, to correct the finding made in 1925 as to the amount of the county indebtedness outstanding when the first order was made.

Judge Sibeck did not attempt to find the indebtedness of Pulaski County in 1931, when he made his second order, nor did the county judge of Prairie County attempt to find the indebtedness of that county when he made in 1934 the second order, the one here involved.

No one contends, and the majority opinion does not hold, that any such power exists. But the county judge in each instance attempted to correct an erroneous find-

ing of fact. In denying that power to Judge Sibeck, it was then said: "As we have already shown, the county court exhausted its jurisdiction, its power and authority by the order of 1925. The county court therefore had no jurisdiction to make the order in question (the second order) and it is void." For the same reason the second order of the county court of Prairie County should be held void, if we are to follow that case, and I therefore respectfully dissent.