**SOVEREIGN CAMP, W. O. W., v. GILLESPIE et al.**

**YELL COUNTY, ARK., et al. v. SAME.**

Nos. 10630, 10634.

Circuit Court of Appeals, Eighth Circuit.

Feb. 11, 1937.

Rehearing Denied March 12, 1937.

Henry Donham, of Little Rock, Ark. (Sam Rorex and Martin K. Fulk, both of Little Rock, Ark., on the brief), for appellant Woodmen of the World.

Thomas Boyers, Lewis Robinson, and F. D. Majors, all of Dardanelle, Ark., for appellants Yell County, Ark., and others.

Wallace Townsend, of Little Rock, Ark. (James G. Martin, Thomas E. Elcock, and Allen A. Schaefer, all of Wichita, Kan., on the brief), for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The Sovereign Camp, Woodmen of the World, is the owner of funding bonds issued by Yell County, Ark., in 1925, payable out of a general property tax levy of not to exceed three mills. It has appealed to reverse a decree in equity which held other bonds issued by the county three years later to be valid, put them on a parity with the 'Woodmen's bonds and required the proceeds of the three-mill tax to be apportioned between the holders of the different bond issues; the part allotted to the Woodmen being insufficient to service its bonds. Yell County claims the later issued bonds are invalid and also appeals from the decree. The two appeals have been heard together.

The amendment to the Constitution of Arkansas now known as amendment No. 10 adopted by vote December 7, 1924, authorized counties in the state to issue bonds to secure funds to pay the county indebtedness outstanding on the date of the adoption of the amendment and to levy a tax on all property in the county not exceeding three mills per annum to pay the bonds and interest. Procedure for such bond issue was prescribed by the Act of March 23, 1925 (pp. 608 to 612) as follows:

Section 1. "The county court of any county or the city or town council of any city or incorporated town may issue bonds for the purpose of funding the indebtedness of such county, city or town outstanding at the time of the adoption of Amendment No. 11 to the Constitution of the State of Arkansas, appearing on pages 797 to 799, inclusive, of the General Acts of the General Assembly of the State of Arkansas of the year 1923. Before the issue of any county or city bonds under this act, the county court shall by order entered upon its records, declare the total amount of such indebtedness or the city or town council shall by ordinance, declare the total amount of such indebtedness. Such order of the county court shall be published immediately for one insertion in some newspaper published in the county, and

such ordinances of the city or town council shall be immediately published in some newspaper issued in such city or town, if there be one, and if not, in some newspaper published in the county; and any property owner who is dissatisfied may, by suit in the chancery court of the county brought within thirty days after the publication of such order or ordinance have a review of the correctness of the finding made in such order or ordinance; but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought the adjudication shall settle the question and appeal therefrom must be taken and perfected within thirty days. If any officer of such county, city or town shall wilfully make any false statement as to the amount of its indebtedness, he shall forfeit his office and be ineligible to hold any other office of profit or trust in this State."

"Section 4. Before or after the issue of said bonds the quorum court of such county or the city or town council of such city or town shall levy a tax, which, on the existing assessed value of the property of such county, city or town, will suffice to retire said bonds as they mature, with five percent added for unforeseen contingencies; provided that said tax shall not exceed three mills on the dollar of such assessed value. If said tax proves insufficient to meet the maturities of the bonds with interest, it shall be the duty of the quorum court of such county or the city or town council to increase such levy of taxes, but not beyond three mills upon the dollar of the then assessed valuation; and if by reason of the increase in the assessed value of the property of such county, city or town a lower rate of tax will prove sufficient to meet the bonds and coupons as they mature, the amount of the tax may be lowered accordingly; but no tax shall be levied which will produce less than the sum required to meet the maturities of the bonds with five percent added for unforeseen contingencies, nor shall any tax in excess of three mills on the assessed value existing at the time of such levy ever be levied in any year. The money derived from such taxes shall be preserved as a separate fund for the redemption of such bonds and any officer of such county, city or town or any other person who uses any of such money for any other purpose shall be deemed guilty of a fel-

ony and imprisoned for a period not less than one year."

In 1925 Yell County availed itself of the authority granted by the amendment (No. 10), and the county court of the county ascertained and duly entered its order of record that the amount of the outstanding indebtedness of the county as of October 7, 1924, was $139,442.61, and after publication of the order, the funding bonds of the county in the amount of the indebtedness ($139,000) were issued and a tax levy of one and three-quarters mills was made to meet them. They were duly sold and the appellant Woodmen of the World is the owner of a portion of them aggregating $89,000. At the time of the issue of the bonds the assessed value of the property in the county was over $6,000,000 and there was a liberal margin between the one and three-quarters mills then required to service the bond issue and the maximum of three mills which the constitution authorized and the statute required to be levied for them "if said tax proves insufficient to meet the maturities of the bonds with interest." Section 4. But the assessed value of property in the county declined so that in 1932 it was one-half of what it was in 1925 and, although it has since increased, the one and three-quarters mills levy is insufficient to service the Woodmen's bonds. The whole three mills would suffice if available for the purpose.

But in April, 1928, about three years after the funding bond issue had been made, the county court of Yell County undertook to make a new adjudication of the outstanding indebtedness of the county as of the date of the adoption of the constitutional amendment December 7, 1924, and determined that such indebtedness was $210,880.96 instead of $139,442.-61 found to be outstanding and funded in 1925, and that there was a balance of $71,-880.96 which the county was entitled to fund but which had not been funded. The new order of the court was entered of record and was published and, no suit being brought against it, additional 4½ per cent. funding bonds were issued in the sum of $83,000 (that amount "being equivalent to bonds in the principal sum of $71,587.50 at the rate of 6 per cent. over the same period"). A tax of one and one-quarter mills was levied by the quorum court to service the new bonds, and that levy, together with the one and three-quarters mills levy for the original bonds, took the

whole three mills authorized by the constitutional amendment. The supplemental bonds were in like form as the original issue and came into the hands of purchasers for value. The proceeds derived from the sale of the new bonds were not applied to any outstanding indebtedness of the county but were placed in the general fund and used for the construction of roads and bridges and purchase of rights of way. The principal of six of the new bonds matured in 1930, 1931, and 1932, and as the county had no funds to pay them, it made an order in 1931 that twelve other bonds of $500 each be issued to refund the matured bonds and the refunding bonds are also outstanding.

In 1934 default had been made in the payment of principal and interest of the first bond issue, and the Woodmen of the World, as owner of bonds of that issue in the amount of $89,000, brought a suit in the chancery court of Yell County to have the later bond issues declared void and to require the entire three mills tax levy to be applied to the payment of its bonds of the first issue. A taxpayer intervened and aligned himself with the plaintiff, and the chancery court found and decreed as prayed in the petition of the Woodmen of the World. But none of the holders of the later bond issues of 1928 and 1931 was made a party to the suit in the chancery court, and it does not appear to be seriously contended that the adjudication became binding upon them. Fetzer v. Johnson (C.C.A.8) 15 F.(2d) 145; Board of Education et al. v. James (C.C.A.10) 49 F.(2d) 91. Some of such holders of the bonds of the later issues brought this present suit on their own behalf and on behalf of all similarly situated in the United States District Court for the Eastern District of Arkansas, and a contrary decree to that of the chancery court was arrived at upholding the later bond issues as valid and requiring the proceeds of the three-mill tax to be ratably apportioned between the holders of the several bond issues.

It is contended for the Woodmen of the World under appropriate assignments of error that the provisions of the constitutional amendment, and the statute under which its bonds were issued, entered into and conditioned the contract between it as a bondholder and the county, and that the subsequent action of the county court and the quorum court in attempting to divert a part of the three-mill tax levy to the

holders of the later bond issues impaired the obligation of the contract and deprived it as a bondholder of its property without due process of law. It presents that in purchasing its bonds it had a right to rely upon the clause of the statute that the county court's finding of indebtedness ("if no suit was brought against it") "should be conclusive of the total amount of such indebtedness and not open to further attack." It points out that if, by any construction contrary to the plain words of the statute, it were left open to the county court to find more indebtedness to issue more bonds upon, then its security given by the other provision of the statute concerning the levy of increased tax to pay the Woodmen's bonds would be diverted. By that provision of the statute it was explicitly stipulated that if the tax levy of one and three-quarters mills which was made to service the bonds of the 1925 issue "proves insufficient to meet the maturities of the bonds with interest," then the duty was imposed upon the taxing body of the county to "increase such levy of taxes but not beyond three mills," and by imposing the duty to make such increase, the corresponding right to compel a levy increase was conferred upon the purchasers of the bonds.

We think these contentions of the Woodmen of the World are sound. The provisions of the statute that the county's indebtedness should be found by a court of record with opportunity for judicial hearing and that the adjudication "should be conclusive of the total amount and not open to further attack" were adapted to carry out the intent of the constitutional amendment and to make the bonds marketable and there was no ambiguity in the specification of the security for the payment of the bonds. Such security was extended in explicit terms to the whole three-mill levy if necessary to service the bonds. Hoehler et al. v. W. B. Worthen Co., 154 Ark. 444, 243 S.W. 822, and McNear v. Little Red River Levee District (C.C.A.) 293 F. 717, and Rowekamp v. Mercantile-Commerce Bank & Trust Co. (C.C.A.8) 72 F.(2d) 852, do not present analogous situations and are not applicable.

 The securing of the Woodmen's bonds by a sufficient part of the three-mill tax, up to the whole thereof if necessary to service the bonds, was an integral part of the contract with the bondholders which the county could not impair or revoke.

The steps which have been taken by the county tending to deprive the first issue bondholders of the security of the whole of the three-mill tax consist of the proceedings that have been had in the county court, including the adjudication of additional indebtedness found to exist December 7, 1924, and the subsequent action of the quorum or tax-levying court. The action of the county court was of judicial nature but the levying of the tax by the quorum court was legislative in character. Preston v. Sturgis Milling Co. (C.C.A.6) 183 F. 1, 4, 32 L.R.A.(N.S.) 1020 (and review of authorities); Morris v. Levy Lumber Co., 103 Ark. 579, 582, 148 S.W. 252, 253. And it was the action of the quorum court in levying the one and one-fourth mill tax for the later issued bonds which most directly took away the security provided in the statute for the bonds of the first issue. We think the action of the quorum court was void as to the bonds which had already been issued and sold on the faith of the statute because it impaired the obligations of the bond contract and deprived the bondholders of their security without due process, contrary to article 1, § 10, and the Fourteenth Amendment of the Federal Constitution. United States ex rel. Von Hoffman v. Quincy, 4 Wall. 535, 18 L.Ed. 403; Board of Liquidation v. McComb, 92 U.S. 531, 23 L.Ed. 623; Louisiana v. Pilsbury, 105 U.S. 278, 26 L. Ed. 1090; Wolff v. New Orleans, 103 U.S. 358, 26 L.Ed. 395; Moore v. Otis (C.C.A. 8) 275 F. 747; Moore v. Gas Securities Co. (C.C.A.8) 278 F. 111; Rorick v. Board of Commissioners (D.C.) 57 F.(2d) 1048, 1055; Hubbell v. Leonard (D.C.) 6 F.Supp. 145; St. Louis Union Trust Co. v. Franklin-American Trust Co. (C.C.A.8) 52 F.(2d) 431, 87 A.L.R. 386.

The holders of the later bond issues do not deny that the levy of the additional one and one-quarter mill tax to meet their bonds took all the margin of tax levy authorized by the constitutional amendment and specified by the statute as the security for the bonds held by the Woodmen of the World; nor that the Woodmen's bonds have come into default on that account. They seek to justify the diversion of the security from the Woodmen under certain decisions of the Supreme Court of Arkansas.

 This court is not bound by the state court decisions on the federal constitutional question. Rowekamp v. Mercantile-

948

Commerce Bank & Trust Co., supra, 72 F. (2d) 852, at page 857; Coombes v. Getz, 285 U.S. 434, 441, 52 S.Ct. 435, 76 L.Ed. 866; Larson v. South Dakota, 278 U.S. 429, 49 S.Ct. 196, 73 L.Ed. 441; Appleby v. City of New York, 271 U.S. 364, 46 S. Ct. 569, 70 L.Ed. 992; Stearns v. Minnesota, 179 U.S. 223, 232, 233, 21 S.Ct. 73, 45 L.Ed. 162. But we have given careful consideration to those cases relied on and find none that would justify depriving the Woodmen of the World of the stipulated increase of tax levy sufficient to service its bonds "but not beyond three mills," provided by the constitutional amendment and the statute under which the bonds were issued. None of the Arkansas cases holds that a supplemental finding of indebtedness and bond issue, and tax levy to pay therefor, could lawfully accomplish the result of depriving the Woodmen of the World of its contract right. The rights of the holders of original funding bonds issued under the constitutional amendment (No. 10) and the statute of March 23, 1925, p. 608 et seq., are not adverted to by the Arkansas Supreme Court in its opinions in Airheart v. Winfree, 170 Ark. 1126, 1128, 282 S.W. 963; Hagler v. Arkansas County, 176 Ark. 115, 2 S.W.(2d) 5; Berry v. Sale, 184 Ark. 655, 43 S.W.(2d) 225; or Caskey v. Holmes, 190 Ark. 183, 77 S.W.(2d) 971. There is nothing in either of those opinions that indicates that such holders of original funding bond issues were in court. The gist of the decisions, so far as applicable here [and Stahl v. Sibeck, 183 Ark. 1143, 40 S.W.(2d) 442, 443, and Cherry v. Overman, 191 Ark. 126, 83 S.W.(2d) 817, 818, may be included in the comment], is this: There was, at first, uncertainty whether the amendment (No. 10) had been legally adopted and then whether the effective date was October 7, 1924, or December 7, 1924. Through mistake as to the effective date, several of the counties funded their indebtedness as of October 7, 1924, instead of the actual effective date, December 7, 1924. The Supreme Court of Arkansas in the case of Caskey v. Holmes, supra, permitted the county court to declare an indebtedness accruing between October 7, 1924, and December 7, 1924, although it had previously made a judicial declaration as to the indebtedness of October 7th. The court's view was that such an order did not attempt to adjudicate a matter already passed on. As the indebtedness accruing between October 7th and December 7th

had never been passed upon, the county could, even at a late date, pass upon it. If supplemental bonds were necessary to cover indebtedness accruing during that two months' period, it was held that the county could issue them, but the court seems not to have apprehended that the condition of a county's indebtedness could have changed so materially in the two months' period as to substantially affect holders of original bonds. It said nothing about such holders or their rights.

In Cherry v. Overman, supra, the Arkansas Supreme Court was, for the first time, concerned with the effect of the issuance of supplemental bonds upon the rights of holders of an original funding bond issue. In the last case it was shown that the issuance of supplemental bonds and levying a tax therefor would not leave enough out of the total three-mill tax levy to service certain original bonds which were outstanding. As soon as it was made to appear to the Supreme Court that the rights of such original holders would be affected by the issuance of supplemental bonds, the county was prohibited from making such a supplemental issue. The court held that its decisions to the effect that a correction as to the date of refunding between October 7, and December 7, 1924, were "on the assumption, of course, that the three-mill maximum levy authorized by the amendment and enabling act would be sufficient to meet the maturities of the entire bond issue." We think it clear that the Arkansas Supreme Court never intended to hold that the right of the owners of the original funding bonds to the whole of the three-mill tax levy, if necessary to pay their bonds, could be impaired by any supplemental proceedings or supplemental tax levy, and we conclude that the Woodmen of the World is entitled to a first and paramount lien upon the proceeds of a tax levy, not to exceed three mills, sufficient to pay the maturities of principal and interest of its bonds.

II. As to the contention that the supplemental bonds are invalid in the hands of the present purchasers for value:

It is clear that these supplemental bonds were issued under the same circumstances and conditions as those attempted to be issued by Pulaski county, fully set out in the opinion and considered by the Arkansas Supreme Court in the case of Stahl v. Sibeck, supra. The conclusion of the court in that case was that the attempt

of the Pulaski county court "to set aside its previous order solemnly adjudicating the total debts of Pulaski county as of October 7, 1924, on the ground that the court made a mistake in the amount of the indebtedness [is] in the very teeth of the provisions of section 1 of the Enabling Act, No. 210 of 1925, p. 608." The county was held to be without authority to issue supplemental bonds based on the so-called corrected finding of indebtedness and was enjoined from doing so.

It is contended for the holders of the supplemental bonds in this case that the decision in Stahl v. Sibeck, supra, is not binding upon them because the holding in the case is contrary to the law previously declared by the Arkansas Supreme Court in the case of Hagler v. Arkansas County, supra. They claim that the declaration of the Supreme Court in the Arkansas County Case was the settled rule of law in Arkansas at the time their bonds were issued and entered into their contract. The theory is that the opinion in the Arkansas County Case settled that it was open to the counties, whenever a mistake of law had been made by the county court occasioning a mistake in the amount of the indebtedness found to be outstanding on the date of the adoption of the constitutional amendment (No. 10), to correct such mistake by making a new finding of indebtedness and authorizing a supplemental bond issue.

The position is not sustained by the opinion relied on. The declaration in that opinion was: "By virtue of authority of this act, it is the opinion of this court that Arkansas county may lawfully pay, from its surplus bond account, any indebtedness existing prior to December 7, 1924, or might yet have a supplemental bond issue to take up the indebtedness existing on December 7, 1924, if the funds in the surplus bond account are insufficient to cover said indebtedness." 176 Ark. 115, 2 S.W.(2d) 5, at page 8, 9.

█ But the statement as to a supplemental bond issue was not responsive to any issue then presented for decision by the Supreme Court and, therefore, would not have the force and effect of an actual holding. Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L. Ed. 1611. And it was not a declaration of any such general principle of construction of the statute as claimed for appellees. As appears from the opinions of the Supreme Court of Arkansas in Stahl v. Sibeck, supra; Berry v. Sale, supra; Caskey v. Holmes, supra; and Cherry v. Overman, supra, the court intended only to sanction a corrective change of the date of funding within the two months' period from October to December, 1924, and such supplemental finding of indebtedness and bond issue as might be occasioned by such correction. "The supplemental bond issue mentioned in the Hagler Case referred to the possibility of correcting a mistake of law, as to when the amendment was adopted, and not one of fact, as to the amount of indebtedness." Stahl v. Sibeck, supra. But the Supreme Court did not indicate that the county courts could infringe upon the mandate of the statute that "such [original] finding shall be conclusive of the total amount of such indebtedness, and not open to further attack."

█ The court's decision in Stahl v. Sibeck, supra, was its first clear declaration upon the power of the county to issue supplemental bonds of the kind in litigation here, and the construction there announced is binding in this case. Marine Nat. Exchange Bank v. Kalt-Zimmers Mfg. Co., 293 U.S. 357, 363, 55 S.Ct. 226, 227, 79 L. Ed. 427.

█ We must hold, following Stahl v. Sibeck, supra, that the attempt of the county court of Yell County shown in this case to make a new determination of county indebtedness in 1928 different from and much greater than the determination it had made in 1925 was not justified by the statute, but was void. We are not unmindful that under the Arkansas decisions the county might, even in 1928, have funded an indebtedness of $19,000 found to have accrued between October 7, 1924, and December 7, 1924, and might have issued bonds in that amount. But such a power to issue bonds for $19,000 affords no basis for redetermining indebtedness previously determined and acted upon. It presents no justification for the issuance of bonds for $83,000. Such was the express holding of the Arkansas Supreme Court in Stahl v. Sibeck. In that case it was contended that a bond issue in the amount of indebtedness which had accrued in the two months' period ought to be sustained. The court said: "As we have already shown, the county court exhausted its jurisdiction, its power and authority, by the order of 1925. The county court therefore had no

950

jurisdiction to make the order in question and it is void. A void judgment is always open to attack, either direct or collateral." It is generally held that a bond issue which is void because the bonds are in an excessive amount cannot be validated in part merely or to an amount that might have been lawfully issued. The bond issue here must fail for want of power to make the bond issue in the amount attempted by the county officers. Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044.

■ III. Although the supplemental bonds contain recitals that all requirements for their issuance had been met, the recitals also disclose that the supplemental bonds were issued in pursuance of orders and judgments of the county court of Yell County "duly made and entered." The judgments referred to were required to be and were entered upon the public records of the county court and the facts which render the supplemental bonds invalid were recited in full in the judgment which authorized their issue; that is, the judgment of 1928 recited the judgment of 1925, and attempted, in effect, to set the earlier judgment aside and establish a new one.* The transcript of the record of

bonds delivered to the attorneys for the purchaser of the bonds, upon which the attorneys' opinion of their validity for sale was rendered, included the judgment and so gave information of the facts. Under those circumstances the purchasers of the bonds were bound to take notice of the want of power on the part of the county officers to issue them. Section 7822, Crawford & Moses' Digest, Ark.1921; Dixon County v. Field, 111 U.S. 83, 92, 94, 4 S. Ct. 315, 28 L.Ed. 360; Sutliff v. Lake County Commissioners, 147 U.S. 230, 13 S.Ct. 318, 37 L.Ed. 145; Lake County v. Graham, 130 U.S. 674, 9 S.Ct. 654, 32 L. Ed. 1065; Katzenberger v. Aberdeen, 121 U.S. 172, 7 S.Ct. 947, 30 L.Ed. 911; City of Sanford v. Chase Nat. Bank (C.C.A.2) 50 F.(2d) 400.

The decree is reversed, with directions to enter a new decree in favor of the Sovereign Camp, Woodmen of the World, and Yell County, and against all holders of the supplemental funding and refunding bonds of 1928 and 1931, in accordance with this opinion. Nothing in such decree, however, to foreclose any rights the holders of the supplemental funding and refunding bonds may have as creditors of the county.

---

* "Whereas, this court did on the 17th day of September, 1925, make and enter of record an order declaring that the indebtedness of Yell County, Arkansas, existing on the 7th day of October, 1924, amount to $139,424.61; and

"Whereas, said order was duly published as required by law and in due time thereafter the sum of $139,000.00 of said indebtedness, as ascertained, was funded into bonds of the county which were executed, issued and sold; and

"Whereas, the court in making the above finding proceeded upon the erroneous assumption that, under Amendment No. 11 to the Constitution of the State of Arkansas, it was authorized to fund only indebtedness payable out of the general revenue fund, existing on the 7th day of October, 1924, the date of the election on said Amendment No. 11, and

"Whereas, the Supreme Court of the State of Arkansas has declared that the meaning of Amendment No. 11, is that counties may fund their outstanding debts

which existed at the time said Amendment went into operation, namely, on the 7th day of December, 1924; and

"Whereas, the county incurred further indebtedness to the amount of $19,000.-00 between October 7, 1924, and December 7, 1924; and

"Whereas, the county was indebted in the sum of $52,456.35, payable out of its general road fund, but this indebtedness was not included in the order of September 17, 1925, for the reason that the county court did not think it had the authority to include indebtedness of that character:

"Now, Therefore, it is hereby determined and declared that the total outstanding indebtedness of Yell County, Arkansas, on the 7th day of December, 1924, was $210,880.96, of which $139,000.00 has been funded, leaving a balance of $71,-880.96, which may lawfully be funded into bonds of the county as provided by law."