Anna Lee DRAYER *v.* William G. WRIGHT, et al.

89-243                                        782 S.W.2d 572

Supreme Court of Arkansas
Opinion delivered January 22, 1990

*Anna Lee Drayer*, pro se.

*McMillan, Turner & McCorkle*, by: *F. Thomas Curry*, for appellee William G. Wright.

JACK HOLT, JR., Chief Justice. The issue in this appeal is whether the chancellor erred in holding that the appellant, Anna Lee Drayer, was precluded by the doctrine of res judicata from litigating certain issues and claims against the appellee, William G. Wright, in regard to the testamentary trust provisions contained in John J. Hardin's will.

John J. Hardin died testate on January 27, 1933, and his will was admitted to probate. The will created two trusts; however, this case only concerns the interpretation of the first trust, known as the John and Errett Hardin Trust (Trust), the corpus of which consists of approximately 1640 acres.

The successor trustee, William G. Wright, initiated a petition for instruction as to the meaning of the Trust and requested an order directing the distribution of all annual proceeds of the Trust, as well as final distribution of the corpus upon expiration of the Trust. Drayer counterclaimed on the basis that the Rule in Shelley's case and the Statute of Uses applied to the Trust provisions.

The chancery court has previously interpreted John J. Hardin's will on December 7, 1955, and April 20, 1973. In this case, the chancellor held that a determination of the membership of the class of beneficiaries was barred by the doctrine of res judicata, and stated that:

> . . . the Trustee continue to hold legal title to the corpus of the Trust until the date eighteen years after the death of the last surviving of the above listed measuring lives upon the terms and conditions set out in the Will of John J. Hardin; that annual distribution of trust income be made on a *per capita* basis to a class of beneficiaries to be determined each year at the time of annual distribution

and consisting of those lawful descendants of John and Errett Hardin whose lineal ancestor through whom he or she descends from John or Errett Hardin has died; that upon the expiration of the trust the fee to the Trust property shall vest in the beneficiaries so defined alive at the date of the termination of the Trust with such beneficiaries taking *per capita.*

From that decree, Drayer appeals on the basis of two points of error: 1) that the trial court erred in ruling that the doctrine of res judicata applied to prevent the application of the Rule in Shelley's case and the Statute of Uses, and 2) that the trial court erred in ruling that the Rule in Shelley's case was not applicable. We find that the doctrine of res judicata is applicable and affirm the judgment of the trial court.

Drayer contends that there were no issues before the court relating to the termination of the trust or the proper disposition of the corpus upon its termination when the court entered its 1955 decree. On this basis, Drayer argues that any ruling of the court in regard to these matters was dicta and not binding on the parties. *See generally Shall* v. *Biscoe,* 18 Ark. 142 (1856); *Connor* v. *Blackwood,* 176 Ark. 139, 2 S.W.2d 44 (1928); *Sovereign Camp, W.O.W.* v. *Gillespie,* 87 F.2d 944 (8th Cir. 1937), *cert. denied* 301 U.S. 698 (1937).

However, Drayer concedes that the court, in 1955, examined the validity of a purported contract undertaken by John and Errett Hardin, and their respective wives and children, to divide the lands of the first trust and defeat the final remainder interest. The agreement stated that, "[i]t is further agreed by all parties to this contract that the division made in this contract of all lands described herein is final and lasting and forever binding on all parties concerned."

The court found that the agreement was "in direct contravention of, and in derogation of, the clear provisions and intent of the will of J.J. Hardin," and declared the contract null and void from its inception. Necessarily, the court had to determine the circumstances surrounding the termination of the trust, and the proper disposition of the corpus upon its termination, in order to assess the validity of the contract at issue.

The court stated in its 1955 decree:

> The court further finds and interprets the will to mean that upon the expiration of the life of the first trust, the lands comprising said trust shall be owned in fee simple by the survivor or survivors of the legal descendant or descendants of testator's sons, John and Errett, who are living at the time of the expiration of the trust, and if there then shall be more than one surviving legal descendant of John and Errett as that term is defined herein, then the lands of the first trust shall be divided among them each share and share alike in the same manner and with a like share going to each as would be the case if such descendants were the only child or children of such one person, and if such one person had died intestate at the time of the trust. . . .

█ We have held that under the doctrine of res judicata, or claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action; furthermore, res judicata bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated. *Toran* v. *Provident Life & Accident Ins. Co.*, 297 Ark. 415, 764 S.W.2d 40 (1989).

Unlike *Connor, supra*, which stated that a question that was considered, but which was not before the court and was unnecessary to the decision of the case, was not binding as authority, the chancellor's 1955 decree squarely faced the issue of the validity of a contract that purported to divide the lands contained in the Trust. Although not specifically addressed in the 1955 decree, the Rule in Shelley's case and the Statute of Uses were imbedded within a determination of the contract issue and, if not in actuality, could have been litigated at that time.

█ Drayer does not dispute that she was represented in the 1955 proceeding by a guardian *ad litem* and is bound by those proceedings. Therefore, we decline to relitigate her claim.

Drayer also argues that the trial court erred in ruling that the Rule in Shelley's case was not applicable. Since Drayer's second point of error relies on this court finding that her claim is not

precluded under the doctrine of res judicata, we need not address the argument.

Affirmed.

TURNER, J., not participating.