FERRIS *v.* STEWART, COUNTY JUDGE.

4-6038

140 S. W. 2d 431

Opinion delivered May 20, 1940.

*Sidney A. Kelley,* for appellant.

*Shelby C. Ferguson,* for appellee.

SMITH, J. Pursuant to the power conferred by amendment No. 10 to the constitution, the county court of Sharp county made, on July 20, 1925, an order to fund its outstanding indebtedness. The apprehension appears

to have been rather general that the amendment became effective on October 7, 1924, the date of the election at which the amendment was submitted to the electors of the state. It was later held, in the case of *Matheny* v. *Independence County*, 169 Ark. 925, 277 S. W. 22, that the amendment became effective, not on October 7, the date of the election, but on December 7, 1924.

Proceeding under the apprehension that the amendment became effective October 7, the county court of Sharp county caused an audit to be made of the county's fiscal affairs, which showed the outstanding indebtedness of the county as of that date to be $20,000, and upon this finding bonds were issued in the sum of $20,000. The amendment provided that to secure the payment of such bonds a general tax of 3 mills on the dollar of assessed values might be levied, and continued until the bonds so issued had been paid, both principal and interest. Serial bonds were issued, the first to mature February 1, 1927, being for $500. There were maturities of $2,500 on February 1, 1937, and maturities for the same amount on February 1, 1940, these being the last maturities. A levy of 2 mills only was thought sufficient to mature these bonds, and only that number of mills was or has ever been levied. This levy proved sufficient to pay maturities, with interest, until February 1, 1937, when default was made. A second default occurred February 1, 1940, so that $5,000 worth of the bonds remain unpaid and are now in default.

It is now proposed to refund these defaulted bonds and to extend the maturity dates thereof. The right to do so presents no serious question. It was expressly held, in the case of *Talkington* v. *Turnbow*, 190 Ark. 1138, 83 S. W. 2d 71, that the power to issue bonds in the first instance includes the power to refund them, provided the refunding bonds do not increase the amount of the outstanding bonds or the rate of interest. Pope county had issued bonds under the authority of amendment No. 10, and it was held in the case just cited that the county had the authority to refund these bonds under amendment No. 10 and the enabling act; 210 of the acts of 1925, p. 608,

which was "An act to facilitate the funding of the debts of counties, cities, and incorporated towns."

It is true Sharp county has heretofore levied only 2 mills against the assessed values of the county to redeem these bonds; but that fact has not exhausted, indeed, has not affected, the power and the duty of the county to pay these bonds. The county, not only has the power, but is under the duty, to levy the entire 3 mills, if necessary, to retire these bonds.

In the case of *Missouri Pacific Railroad Co.* v. *Fish,* 181 Ark. 863, 28 S. W. 2d 333, it was sought to enjoin the county from levying a 3-mill tax, upon the ground that a rate this high was not required to retire the bonds issued under the authority of amendment No. 10. It was held that the rate to be levied was a matter within the discretion of the levying court, and that the question could only be raised before the levying court when the rate was fixed; but that it was always the duty, and the county court could be compelled, to levy such rate as was necessary to pay the bonds, not exceeding 3 mills on the dollar, citing *Stranahan, Harris & Oatis, Inc.,* v. *Van Buren County,* 175 Ark. 678, 300 S. W. 382.

Refunding of the defaulted bonds is not, however, all Sharp county is proposing to do. The county court found that between October 7 and December 7, 1924, the county incurred indebtedness of $5,117.59, which had not been funded into bonds and is still outstanding, and it is proposed that the new issue shall cover this sum as well also as the amount of the bonds in default, and to service the payment of the new bonds by a tax levy of 3 mills on the dollar. The petition and complaint of a citizen and taxpayer who sought to enjoin this action was dismissed as being without equity, and this appeal is from that decree.

In the case of *Caskey* v. *Holmes,* 190 Ark. 183, 77 S. W. 2d 971, it was said that ". . . . this court has three times held that when a mistake was made as to the date of the adoption of the amendment, the county court fixing it at October 7 instead of December 7, bonds may be issued to pay the indebtedness that accrued between

October 7 and December 7.'' That case was distinguished from the case of *Stahl* v. *Sibeck,* 183 Ark. 1143, 40 S. W. 2d 442, the distinction being that in the Stahl case the error in the order and judgment of the county court related, not to the date on which the amendment became effective, but to the amount of the indebtedness outstanding on the date it was ascertained, and in which case it was held that the order ascertaining the outstanding indebtedness became *res adjudicata.*

In the later case of *Cherry* v. *Overman,* 191 Ark. 126, 83 S. W. 2d 817, the right of the city of Little Rock to authorize a second bond issue to refund its indebtedness outstanding when amendment No. 10 was adopted was denied, for the reason that the 3 mills levied to pay the first bond issue had proved insufficient to pay that issue. It was pointed out in that opinion that in the case of *Caskey* v. *Holmes* and previous cases the right to issue bonds covering the indebtedness incurred between October 7 and December 7 had been upheld ''on the assumption, of course, that the 3-mill maximum levy authorized by the amendment and enabling act would be sufficient to meet the maturities of the entire bond issue.''

The instant case is the first case in which it has been attempted by a single bond issue to cover indebtedness incurred between October 7 and December 7 and defaulted bonds also which had been issued in funding indebtedness outstanding on October 7.

It is insisted that the effect of the opinion of the Circuit Court of Appeals of this circuit in the case of *Sovereign Camp, W. O. W..,* v. *Gillespie,* 87 Fed. 2d 944, is to hold that this cannot be done, for the reason that to do so would impair the obligations of the contract under which the first bondholders purchased. This opinion reviews a number of our cases on the subject of bonds issued under amendment No. 10 and manifests an accurate apprehension of our cases and the distinctions between them, as applied to the facts of different cases.

The facts in that case were that Yell county issued $139,442.61 in bonds to cover its indebtedness outstanding on October 7, 1924, and to secure their payment

levied a tax of 1¾ mills. The assessed valuation of the property declined to the point that the revenues derived from the 1¾ mill tax was insufficient to meet the obligation of this first bond issue. It was discovered and by the county court determined that the indebtedness of the county on December 7 was $210,880.96, instead of $139,-442.61. Upon that finding it was adjudged that the county court was entitled to issue bonds for the difference between these amounts, and additional bonds were issued by the county and sold, and an additional tax of 1¼ mills was levied by the quorum court of the county to service the new bonds.

Default was made in the payment of principal and interest of the first bond issue, and the holders of a portion thereof brought suit to have the later issue declared void and to require the entire 3-mill tax to be applied to the payment of the first bond issue. The holders of the second bond issue admitted that the levy of the additional 1¼ mills to meet their bonds took all the margin of the tax levy authorized by the constitutional amendment and specified by the statute as the security for the first bond issue, and it was admitted that the first bonds had come into default on that account.

The relief prayed was awarded by the Court of Appeals of this circuit, upon the ground that the second bond issue constituted an impairment of the obligations of the contract under which the first bonds had been issued and sold, and it was ordered that the entire 3-mill levy be devoted to the payment of the first bond issue.

Here, it is not contended that the 3-mill levy will be insufficient to pay the entire proposed bond issue, including the proposed new bonds and those which are in default.

If it is proposed with the proceeds of the sale of the new bonds to pay and retire those in default, we perceive no constitutional objection to this being done. It is no impairment of a contract to pay a debt, to pay it, and the holders of the bonds in default would have no right to object to this action. But the holders of the bonds in default do have the right to demand the preferential

application of so much of the proceeds of the 3-mill levy as may be required to pay their bonds to the exclusion of those subsequently issued, if all may not be paid.

We have held that authority exists to refund defaulted bonds, and we have also held that authority exists to fund outstanding indebtedness incurred between October 7 and December 7 by a second bond issue when that indebtedness was not covered by the first bond issue. These items represent the same debt, which is the outstanding indebtedness existing when the amendment became effective, and we think it is permissible to secure them both with a single bond issue, to be paid with the 3-mill tax levy. But if such bonds should be issued and sold and if, for any reason, the bonds in default were not paid with the proceeds of the sale, then the holders of the bonds in default would have the right to have the 3-mill levy applied to their payment, and they would be entitled to have the entire 3 mills, or so much thereof as was necessary, devoted to that purpose, as the first bonds are past due and unpaid.

The decree here appealed from does not appear to contravene the principles here announced, and it is, therefore, affirmed.