DuVal v. City of Little Rock.

5-1274                                        300 S. W. 2d 19

Opinion delivered March 25, 1957.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*O. D. Longstreth, Jr.; Spitzberg, Bonner, Mitchell & Hays,* and *Mehaffy, Smith & Williams,* for appellee.

SAM ROBINSON, Associate Justice. The City of Little Rock owns its water supply system. The City is growing rapidly and there is an urgent need for expanding and improving the water supply. In order to raise money for this purpose, the City seeks to issue Revenue Bonds under an Indenture. The appellants, George E. DuVal, property owner, taxpayer and water customer, and Curtis Barham, owner of Water Works Bonds issued in 1936, filed this suit to enjoin the issuance of new bonds to finance the contemplated improvements, extensions and betterments.

The City demurred to the complaint. The trial court sustained the demurrer, and DuVal and Barham have appealed.

To facilitate the new bond issue, hereinafter referred to as the 1956 issue, the City Council passed Ordinance No. 10,364. The ordinance declares the value of the then existing water supply system to be $11,715,000, excluding improvements made in 1952, and the value of the proposed betterments and improvements to be made under the 1956 bond issue and those made under a 1952 bond issue to be $9,585,000, the face amount of the 1956 bonds; the 1952 bonds are to be refunded. The ordinance further provides that the value of any improvements made in the future under the 1956 Indenture shall be the face amount of the bonds so issued to provide for such improvements. The revenues to be used in

retiring the various bond issues are to be apportioned in accordance with such valuation. Appellants say that the fixing of such values and apportioning the revenues accordingly is not authorized by law and impairs the security for the 1936 bonds.

In Section 11 of Article V of the 1936 Indenture it was recognized that it might be necessary in the future for the City to issue additional bonds for further betterments, etc. The 1936 Indenture therefore provides for an increase in rates, if necessary, to meet the requirements of all bond issues. Hence, additional bond issues were anticipated and provision made for an increase in rates, if necessary, to meet all payments on the various issues.

Section 10 of Act 131 of 1933 (as now amended, is Ark. Stats. § 19-4210) was in effect at the time of the making of the 1936 Indenture, and applies insofar as that indenture is concerned; it provides: "Whenever any municipality . . . shall own and operate a waterworks system . . . and shall desire to construct improvements and betterments thereto, it may issue revenue bonds under the provisions of this act to pay for same, and the procedure therefor, including the fixing of rates and the computation of the amount thereof, shall be the same as in this act provided for the issuance of bonds for acquisition or construction of a waterworks system in a municipality which has not theretofore owned and operated a waterworks system; provided, however, that in the ordinance declaring the intention to issue the bonds and providing details in connection therewith, the council shall (a) provide, find and declare in addition to the other requirements set out in this statute the value of the then existing system and the value of the property proposed to be constructed, . . ." This act specifically authorizes the City Council to do the very thing the Council did in the case at bar: "The Council shall provide, find and declare . . . the value of the then existing system, and the value of the property proposed to be constructed."

Paragraph IX of the complaint alleges: "The Board of Commissioners of the Little Rock Municipal Water

Works has filed with the City Council a report on the values of the properties constituting the existing waterworks system, and the City Council has fully considered said report and other pertinent information and, as a result thereof, has found and declared that the value of the existing waterworks system, excluding the betterments and improvements financed by the Waterworks Improvement Revenue Bonds of 1952, is $11,715,000 . . ." In finding the value of the then existing system, the Council did exactly what is required by the statute. It is not shown just how the valuation of $11,715,000 was reached, but the complaint alleges that the Council had fully considered the report of the Commissioners of the Water Works system and other pertinent information. There is nothing indicating that the Council used an unlawful method in finding the valuation. Furthermore, at the time the 1936 bonds were issued there was a valuation of only $6,590,000, which was also the total amount of the bonds issued in 1936. But now, there is a valuation of $11,715,000 assigned to the existing system and only $4,572,000 balance outstanding of 1936 bonds. Hence, as a matter of fact, the 1936 bondholders now have a great deal more security than they had to start with.

Probably to simplify and make less expensive the issue of bonds in the future, the 1956 Indenture is calculated to serve for all subsequent bond issues; in other words, for financing purposes the 1956 bonds will be combined with future bond issues. Appellants contend: "The action of appellees in combining for financing purposes, the proposed $9,585,000 Water Revenue Bonds, Series 1956, with subsequent series of bonds, to be issued from time to time in the future, without making separate determinations of values and divisions of revenues at the time of each such subsequent issue, is contrary to law and in violation of the rights of the holders of the 1936 Indenture Bonds." It is true that the present valuation of the existing system, $11,715,000, will be in effect in the future notwithstanding additional bonds may be issued under the 1956 Indenture. But it makes no difference whether such bonds would be issued now un--

der the 1956 Indenture or issued at some time in the future. The 1936 bondholders will be in no way prejudiced as they will always have the $11,715,000 valuation and the revenues based on that valuation for the payment of the 1936 bonds.

The 1936 bonds are being retired regularly but if there should ever become a time that the revenues are not sufficient under the prevailing rates, this situation would be met by increasing such rates, as provided by Section 11 of Article V of the 1936 Indenture, which provides: "The City further covenants and agrees that if, at any time while any of the bonds issued under and secured by this Indenture shall be outstanding, it shall issue additional revenue bonds under the provisions of Section 10 of said Act 131 of 1933, as amended, to construct improvements or betterments to the waterworks system, the rates for water shall be increased, if necessary, to such extent that the revenues of the waterworks system remaining after setting aside the proportion thereof applicable to the payment of the additional revenue bonds issued for such improvements or betterments and to the costs of the operation and depreciation thereof, shall be sufficient to make the payments required to be made under Sections 6, 8 and 9 of Article III of this Indenture into the Water Revenue Bonds Fund, into the Water System Depreciation Fund and into the Water System Operation and Maintenance Fund, respectively." We fail to see how the finding at this time of the present valuation of the existing system does not comply with Act 131 of 1933. It is true that the act provides that "the Council shall provide, find and declare in addition to the other requirements set out in this statute, the value of the then existing system and the value of the property proposed to be constructed," but the Council has declared the valuation of the present system existing at the time of making the new 1956 Indenture, and the fact that all of the bonds that may be issued under that Indenture in the future are not issued at this time is of no consequence. The holders of the 1936 bonds are amply protected with the valuation fixed, and the purchasers of the bonds under the 1956 Indenture take with

full knowledge of all of the provisions of that instrument. Certainly, the statute does not mean that the 1936 bondholders are entitled to more valuation than that existing at the time of the first bond issue subsequent to the 1936 issue. True, subsequent issues give additional value, but this additional value must be handled so as to produce revenues to retire the subsequent issues.

There was a comparatively small bond issue in 1952; these bonds were sold at a very low rate of interest, part bearing interest at 1 3/4% per annum and part bearing 2%. The 1952 bonds are callable, and under the 1956 Indenture they will be refunded. The 1956 issue is in an amount sufficient to take care of such refunding, and although the 1956 bonds may bear interest at not more than 5% per annum, the 1956 Indenture provides that an amount of the 1956 bonds sufficient to refund the 1952 bonds may bear interest at no more than the present interest rate on the 1952 bonds. In other words, the bonded indebtedness on the 1952 bonds is not being increased by the refunding of those bonds. The power to issue bonds includes the power to refund such bonds provided the debt on the old bonds is not increased. *Talkington* v. *Turnbow,* 190 Ark. 1138, 83 S. W. 2d 71; *Arkansas Bond Company* v. *Harton,* 191 Ark. 665, 87 S. W. 2d 52; *Ferris* v. *Stewart, County Judge,* 200 Ark. 714, 140 S. W. 2d 431. This court has approved the combining of refunding bonds and construction bonds in a single issue. *Bay Special Consolidated School District No. 21* v. *Hall,* 194 Ark. 423, 107 S. W. 2d 347. And the law does not prohibit the refunding of any series of bonds that may be issued under the 1956 Indenture.

The 1956 Indenture permits a redemption of the bonds issued thereunder at specific periods upon the payment of a premium for such redemption. Those bonds are being sold without the privilege of conversion, therefore the bond dealer who purchases the bonds from the City must in turn sell the bonds at a premium in order to realize a profit. Of course, no one would buy a bond and pay a premium therefor if the City could redeem the bond at par. Hence, the Indenture provides for a

premium in the event the City desires to redeem before maturity. But, the redemption premium allowed, coupled with the interest rate which the bonds will bear, does not exceed the rate of interest allowed by law.

The 1956 Indenture is what is known as an "Open End" Indenture, and authorizes the issuance of additional bonds on a parity with the 1956 series. The 1956 Indenture provides that before such additional bonds may be issued there must be revenues amounting to a gross of 200% and a net of 130% of the revenues needed to make the payments on the outstanding indebtedness. Appellants contend that this limitation is not authorized by law. This provision is for the protection of both the City and the purchasers of the bonds. It is realized that there will be a necessity for the issuance of additional bonds on one or more occasions before the 1956 bonds are retired. The City stands to save a great deal if such bonds can be issued under the 1956 Indenture on a parity with the 1956 bonds. But, of course, before a purchaser of the 1956 bonds would agree to such an arrangement he would want to know that additional bonds would not be issued recklessly, even if this could be done, which is not probable. The statutes in no way prohibit the City from agreeing to such a provision in the Indenture; in fact, Ark. Stats. § 19-4216 provides: ". . . The priorities as between successive issues of revenue bonds may also be controlled by the provisions of said ordinance. Said ordinance may also, if deemed desirable, provide for the execution . . . by the municipality of an indenture defining the rights of the bondholders *inter sese* . . . providing for the priority of lien as between successive bond issues, . . . or the application or safeguarding of the proceeds of the bonds, or other covenants intended for the protection of the bondholders; and containing any other provisions (whether similar or dissimilar to the foregoing) which are consistent with the terms of this act and which may be deemed desirable." Here, the City has determined that it is desirable for the Indenture to contain a provision in regard to the receipt of revenues before the issuance of addi-

tional bonds under the 1956 Indenture. We cannot say as a matter of law that such provision is not desirable.

Appellants complain that under the 1956 Indenture the City is not required to maintain separate depreciation, operation and maintenance funds. Of course, the purchasers of the 1956 bonds will take with full knowledge of the provisions of the indenture. There will be allocated to the 1936 bonds the proper percentage of the gross revenues; it is hard to see how the 1936 bondholders will be prejudiced, but if at any time a proper percentage of the revenues is not allocated to the retirement of the 1936 bonds, such condition could be corrected.

Affirmed.

Justices McFaddin, Millwee and Smith dissent in part.