WAYNE SUMMEY, appellee, v. CITY OF AMES, IOWA, appellant.

No. 50092.

(Reported in 104 N.W.2d 617)

1200

AUGUST 2, 1960.

Rex B. Gilchrist, of Ames, and William L. Hassett and Herrick & Langdon, all of Des Moines, for appellant.

Russell Jordan, of Des Moines, for appellee.

THOMPSON, J.—We are here concerned with the right of the City of Ames to issue certain bonds for the improvement and extension of its waterworks system. The facts were stipulated. The trial court's judgment and decree, rendered in plaintiff's action for a declaratory judgment, holds that the defendant, City of Ames, may not issue the bonds, and the case comes before us upon its appeal.

On June 20, 1953, the defendant adopted its resolution providing for the issuance of $600,000 of Waterworks Revenue Bonds, and they were duly issued. As of the date of the trial there were still outstanding $260,000 in face amount of these bonds, maturing $65,000 on June 1 each of the years 1960 to 1963 inclusive. All payments of principal and interest had been made to that time in accordance with the terms of the bonds. The bonds were issued under the provisions of the Simmer Act, chapter 397 of the Code. As this chapter requires, they are not general obligations of the City, but are payable only from net revenues of the water system, which are pledged therefor. The plaintiff is the owner and holder of bond No. 600 of this issue, in the face amount of $1000, maturing June 1, 1963.

On November 17, 1959, the City council adopted its resolution providing for the issuance of an additional amount of $342,000 of Water Revenue Bonds, payable likewise only from the net revenues of the water system. These bonds are by their terms to be on a parity with the 1953 bonds; and $10,000 of them are to mature on June 1 of each of the years 1960 to 1963 inclusive. The plaintiff urges that the City has no power to issue further bonds payable from the net revenues prior to the maturity and payment of his bond of the 1953 class.

I. The plaintiff contends and the trial court agreed, that the situation here is ruled by Miehls v. City of Independence, 249 Iowa 1022, 88 N.W.2d 50. But we think there is a material difference in the situation which requires a different holding. There was no provision in the first issue of bonds which we considered in the Miehls case permitting the issuance of additional bonds, at a later date, which would rank on a parity with them. In the case at bar, the bonds of the original issue of which plaintiff's is one, carried upon their face this language: "* * * but this bond and the series of which it forms a part, *together with any additional bonds as may be issued and outstanding from time to time on a parity therewith under the conditions and restrictions set forth in said resolution * * *.*" (Italics supplied.) This gave the bondholder notice, even without resorting to the resolution, that further parity bonds might

be issued. No such warning was given by the original issue in the Miehls case.

■ II. The arguments have taken a wide range, but we think the question before us is a narrow one. The original bonds gave notice of and reserved the right to issue further bonds "on a parity" with the first ones. But the plaintiff's entire argument is devoted to the point that by providing that some of the second issue, the "parity" bonds, mature before all of the 1953 bonds were fully paid and retired, something more than parity was achieved. It is contended that the second bonds, to the extent they matured before some of the first issue, were thereby made in fact prior to the 1953 ones. With this we are unable to agree. This interpretation would in effect make the "parity" bonds, the second issue, in fact inferior to the first. They would not then be parity bonds. We said in the Miehls case, page 1030 of 249 Iowa, page 55 of 88 N.W.2d, that "We see no objection to the issuance of additional revenue bonds to mature following the maturity of all outstanding bonds previously issued, or where an adequate sinking fund has been provided for full payment of such outstanding bonds." So here the reservation in the first issue of the right to issue additional bonds on a parity with the first would mean nothing.

We think this reservation means that additional bonds may be issued which would have equal standing with the 1953 issue, even though some of them may mature before all of the original issue is retired. The original bonds themselves matured at different times; so that some of them are paid before the others. It is true "parity" means equality; but we must consider the entire situation, particularly the right here to issue additional bonds which would be of the same standing or class as the first issue. Webster's New International Dictionary defines "parity" as "The quality or condition of being equal or equivalent; a like state or degree; equality; close analogy". So the second issue would have the same status as the first; but the first issue itself contemplated bonds of various maturity dates.

■ While we think the original bonds themselves gave sufficient notice to purchasers that additional parity bonds might be issued, we also hold that the resolution itself was a part of

the contract, as we shall endeavor to make clear in the following division of this opinion. Section 6 of this resolution, which reserves the right to issue additional bonds, also protects the original holders against improvidence in such issue. The new parity bonds may be issued only "if the officially reported net revenues of said waterworks for the last preceding calendar or fiscal year prior to the issuance of such additional bonds was equal to at least one and one-fourth times the total of (1) the maximum amount of principal and interest that will become due in any calendar year on the bonds then outstanding under the terms of this resolution and (2) the maximum amount of principal and interest falling due in any calendar year prior to the last year in which any of the bonds issued pursuant to this resolution mature on the bonds then proposed to be issued, * * *." The stipulation of facts and the pleadings in the case show without dispute that these conditions have been fully met, and the plaintiff does not contend otherwise. So we have the language of the original bonds themselves giving the right to issue further parity bonds; and the language just quoted not only provides a measure of protection for the holders of the 1953 issue, not an essential requirement before additional parity bonds may be authorized, but its meaning is clearly that such additional bonds, or some of them, may mature before all of the first issue is paid. Requirement No. 2, quoted above, unmistakably refers to the amount of principal and interest falling due in any year on the new bonds, the "bonds proposed to be issued" under the parity right reservation, "prior to the last year in which any of the bonds issued pursuant to this resolution mature".

III. While we have held that the wording of the original bonds is in itself sufficient to give notice of the right to issue parity bonds, the question whether the authorizing resolution is a part of the contract is discussed at length by the parties and we think should have our attention. The plaintiff relies upon language in the Miehls case which he thinks holds the resolution is not something of which the purchaser of the bonds need take notice. There is language in the case which seems to uphold this contention. But it must be read as a

whole, and with the peculiar situation there in mind. There was no reservation in the original bonds of any right to issue parity bonds. It was the defendant-City's contention that since it might divert surplus revenues from the operation of its utility, under certain conditions, to other funds by a three-fourths vote of the city council, it had the right to anticipate there would be such surplus funds during the coming years, which would be diverted to the payment of a new issue of bonds, and so could provide for the maturities and payment of such bonds even ahead of some of those of the original issue. We pointed out that it was only surpluses already earned that might be so used, and then only by a vote of the present council; and that, although such surpluses had been earned in the past, there was no assurance they would be forthcoming in the future; and further that the present council, authorizing the issuance of additional bonds, could not bind a future council to divert any possible surpluses to the payment of the new bonds rather than to some other fund.

In the light of these circumstances, we said: "The purchaser of the bonds is not bound to inquire as to the terms of council proceedings or resolutions preliminary to the issuance of the bonds. He has a right to rely upon the statements in the bonds that they are issued in compliance with the statutes and laws of the state, and the city may not contend otherwise." Page 1028 of 249 Iowa, page 53 of 88 N.W.2d. We were discussing a situation in which the defendant-City was claiming the right to issue further bonds, not because of any notice given in the bonds themselves, but through an asserted right to divert surplus funds under sections 397.39 and 397.40 of the Code. We held these sections did not authorize such diversion, and the owners of the original bonds might rely upon the assurance therein that they were issued in compliance with the laws of the state. As the defendant in the case at bar urges, there arises an estoppel by recital in the bonds against the City. The purchaser may rely upon statements in the bond that it is issued in conformity to law, and he need not take notice of recitals in the authorizing resolution repugnant to the statements in the bond itself, or which are not in conformity to the applicable statutes.

These are the holdings in the Miehls case. See Fletcher, Cyclopedia Corporations, Volume 6A, section 2715.

■ IV. But without doubt the general rule is that the resolution, so far as it is not incompatible with law or the bond itself, is a part of the contract between the issuing authority and the purchaser. A corollary proposition, which here arrives at the same result, is that the purchaser must take notice of statements appearing on the face of the bonds themselves. This is an application of the rule that the purchaser of a negotiable instrument must take notice of what appears on its face. Jones, Bond and Bond Securities, Volume 1, section 308.

Many authorities have held that the authorizing ordinances or resolutions when not contradictory of statements in the bonds or repugnant to the laws of the state become a part of the contract between the municipality and the bondholder. City of Glendale v. Chapman, 108 Cal. App.2d 74, 98, 238 P.2d 162, 163; Schmidt v. Village of Kimberly, 74 Idaho 48, 256 P.2d 515, 521; State v. Town of River Junction, 125 Fla. 267, 169 So. 676, 678; Gate City Garage v. City of Jacksonville, Fla., 66 So.2d 653, 659; Miller v. State, 83 Ga. App. 135, 62 S.E.2d 921, 925; Lawson v. City of Moultrie, 194 Ga. 699, 22 S.E.2d 592, 594; Staiger v. Madill, 328 Mich. 99, 43 N.W.2d 77, 84.

V. Likewise it is an established rule of law that the purchaser of municipal bonds must take notice of the provisions of the authorizing ordinance, if they are not repugnant to the terms of the bond itself or the applicable law of the state. Jones, Bond and Bond Securities, supra; Du Val v. City of Little Rock, 227 Ark. 612, 300 S.W.2d 19, 22; State ex rel. Mueller v. Todd, 114 Mont. 35, 132 P.2d 154, 156. This is particularly true where, as in the case at bar, the bonds themselves make reference to the right to make a further issue, or issues, on a parity with the original ones. Here, in the language of Shakespeare, "It is so nominated in the bond"; in the Miehls case it was not.

We conclude the trial court was in error in its judgment. The case is reversed and remanded for a decree upholding the right of the City to issue the proposed parity bonds, in accordance with this opinion.—Reversed and remanded for decree.

1206

LARSON, C. J., and GARFIELD, GARRETT, HAYS, PETERSON, and THORNTON, JJ., concur.

OLIVER, J., not sitting.