R. Thomas DOUGLASS et al., Appellees,

v.

The IOWA CITY, a municipal corporation, et al., Appellants.

No. 2–56106.

Supreme Court of Iowa.

May 22, 1974.

Jay H. Honohan and James M. Hess, Iowa City, and Kenneth H. Haynie, Des Moines, for appellants.

Johnston, Penney & Bray, Iowa City, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendants, The City of Iowa City, Iowa, and named members of the city council, appeal from a district court decree enjoining them from issuing $2,000,000 in parking revenue bonds for the purpose of constructing a multi-level parking facility in downtown Iowa City. We modify in part, reverse in part, and remand with directions.

Ordinance 2632, adopted July 3, 1972, authorized and provided for the issuance, and secured the payment of, parking facility revenue bonds under the provisions of chapter 390, The Code. There is no dispute concerning the legality of preliminary steps or the enactment of the ordinance. The bonds were sold and construction bids solicited.

Following the filing of this suit the purchaser of the bonds withdrew its bid. The City cancelled the bond sale and plans for

constructing the parking facility pending the outcome of the litigation.

Ordinance 2632 is in evidence. It specifically provides the bonds are to be paid solely and only from the future net revenues of the consolidated parking system and shall not be a general obligation of the City nor payable in any manner by taxation. Revenue from both on-street and off-street parking facilities was pledged to secure payment of these bonds. By the terms of the ordinance, revenue from parking does not include fines received by the City as the result of parking and traffic violations.

Both parties assume fines for parking violations have been and will be paid into the general fund, not the parking fund. Fine revenues in 1971 exceeded $212,000 and collection costs were only $78,800.

In 1970, the City transferred $107,000 to the general fund from the parking fund to pay for the cost of enforcement and administration of the parking system. In 1971, $117,000 was so transferred. But in 1972 the City transferred only $15,000 for that purpose and proposed to make no transfer in 1973.

Salaries for the clerical help, parking enforcement and attendants and supervisory personnel whose duties are solely to facilitate the enforcement and collection of parking meter fines and the incidental expenses are to be paid out of the general fund although in 1970 and 1971 this expense was paid from the parking fund.

The City has 1349 on-street metered parking spaces. Expense of maintenance, repair, cleaning and clearing of snow from the streets, including these spaces, is paid from tax revenues through the road use tax fund. Similar work relating to off-street parking is financed from the parking fund, as is painting of on-street spaces.

The City's director of finance testified the proposed ramp would not generate sufficient revenue to pay its operational and maintenance costs and the retirement of its bonds. The change in the method of paying enforcement costs was impelled by the ramp and taken "because of the need for available funds within the parking system and to reduce the amount that we would need to borrow and to generate the service debt."

Division I of plaintiffs' petition alleged the above described expenditure of road use tax revenue and payment of enforcement costs out of the general fund, asserted all of this would result in an illegal, indirect use of tax monies for the retirement of revenue bonds, and prayed that sale and delivery of the revenue bonds be permanently enjoined. In division II plaintiffs alleged defendants proposed to pay costs of maintenance and meter enforcement costs from the general fund rather than from funds derived from the operation of parking meters as required by § 390.8, The Code. Plaintiffs prayed the City be permanently enjoined from making such expenditures from general funds.

Trial court's decree enjoined sale and delivery of bonds under Ordinance 2632 until all meter enforcement costs are deducted from all future parking meter revenues, until costs of maintenance of on-street parking spaces are deducted from the parking meter revenue funds, and until payment of certain revenue bonds issued under a prior ordinance.

I. *Scope of review and procedural matters.*

Our review in this equity action is de novo. Farrell v. State Board of Regents, 179 N.W.2d 533, 537 (Iowa 1970); rule 334, Rules of Civil Procedure.

■ Although the issues in this case are well-briefed, we note both briefs fail to comply with rule 344, R.C.P. by failing to incorporate a table of cases alphabetically arranged, and by referring to parts of the record almost exclusively by use of pages of the transcript, rather than the appendix, without providing the court with a cross-reference between the two. The appendix

does not include the relevant docket entries in the proceeding below. Rule 344.1, R.C.P. This part of the appendix should minimally include date of filing of petition, date of final judgment or decree, and date of filing notice of appeal. The appendix summarizes the evidence rather than setting out relevant portions of the transcript with transcript page numbers indicated in brackets as required by rule 344.1(d). Compliance with appellate rules will expedite the efforts of counsel and court to achieve prompt disposition of appeals.

We turn to the basic issues raised in this litigation.

II. *May maintenance, surfacing, repair, cleaning and snow removal of on-street metered parking spaces be paid from road use tax funds?*

At the threshold it should be noted all parties apparently agree tax monies cannot be employed to retire revenue bonds for off-street parking. Section 390.9 provides:

"* * * such bonds * * * shall be a lien on the property purchased from the proceeds thereof but shall not be a general obligation of such city or town and shall not be payable in any manner by taxation nor shall the municipality be in any manner liable by reason of said funds being insufficient to pay said bonds."

Plaintiffs invoke the general principle that the City should not be permitted to do indirectly what it cannot do directly. The City asserts it is merely doing what the law allows it do.

■ Section 312.6, The Code, prescribes those purposes for which road use tax funds may be spent. Subsection 1 provides:

"For the purposes for which street fund money may be used, with the exception of parking facilities as provided in subsection 5 of section 404.7."

The three applicable provisions of § 404.7 permit street funds to be used for:

"2. * * * maintaining, repairing, surfacing * * * any street, highway, avenue, alley, public ground, or market place.

* * * * * *

4. For the removal of snow and ice from the streets.

5. In lieu of the tax provided by section 390.2 to acquire and improve real estate and to erect or improve buildings thereon for the parking of vehicles to the extent that income from parking meters or parking lots is insufficient for said purposes."

These statutes make it apparent road use funds may be used for street maintenance, surfacing, repair, and snow and ice removal, but not to acquire or improve real estate for parking purposes.

The basic issue is thus whether portions of streets designated as metered parking spaces lose their character as streets within the meaning of § 404.7.

In § 321.1(48) the legislature defined "street" to mean "the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic." Section 390.8(3) relates to the expenditure of parking meter revenue for the purchase and installation of parking or traffic control devices "on such portion of streets as are equipped with parking meters." Throughout chapter 390, The Code, references are made to "off-street parking areas," distinguishing such locations from those areas on the streets designated for parking.

■ Nothing in the relevant statutes indicates the legislature intended that metered on-street parking areas should lose their character as part of the municipal street system for the purpose of road use tax fund expenditures. To the contrary,

the legislature in § 312.6(1), with all of the various permissible uses of street fund money before it in § 404.7 (maintenance, repair, snow and ice removal, and others), selected only one off-street situation—acquisition and improvement of real estate and erection and improvement of buildings for parking purposes—in which to prohibit expenditures of road use tax funds.

On-street parking areas are not necessarily used exclusively for parking, other than for certain hours or days. We hold their character as part of the street system remains intact for the permissible expenditure of road use tax funds for the purposes of repair, surfacing, maintenance, cleaning and snow removal.

III. *May the cost of meter ordinance enforcement be charged to the city general fund?*

Although we find no express statutory direction, the City concedes fines from parking meter violations are properly paid into the general fund. See § 367.9, The Code, 1971; 1973 Regular Session of the 65th General Assembly, Chapter 282, Section 42; Thomson v. City of Dearborn, 347 Mich. 365, 79 N.W.2d 841 (1956). The City contends costs of production of such revenue are properly allocated against the general fund if it decides to do so.

Plaintiffs assert § 390.8, The Code, mandates such enforcement expense be paid from parking revenues:

"*390.8 Use of funds.* Funds derived from the operation of parking meters shall be used for the following purposes and none other, to wit:

1. Payment of the cost of acquisition and installation of meters purchased.

2. Payment of the cost of maintenance and repair of meters, the collection of meter taxes, and the enforcement of traffic laws in the parking meter district.

3. Payment of the purchase and installation costs of other parking or traffic control devices installed on such portions of streets as are equipped with parking meters.

4. Payment of the cost of acquiring by purchase, lease or similar arrangement of parking lots or other off-street parking areas, including operation, enlargement or improvement thereof or the facilities thereof * * *.

5. Retirement of revenue bonds issued pursuant to the provisions of this chapter; and cities and towns may pledge such funds not required for the payment of cost under subsections 1, 2 and 3 hereof to the payment of such bonds.

Until such time as there shall have been provided adequate parking lots or other off-street parking areas in any city or town operating parking meters, all revenues derived from the operation of such parking meters or other similar devices not required for the payment of costs under subsections 1, 2 and 3 hereof shall be expended for the acquisition of such facilities, provided, however that the total expenditures for items 2 and 3 shall not exceed twenty-five percent of the total meter income * * *."

The City asserts the above statute is merely a limitation on the uses of parking revenue funds: it does not require that *only* parking revenue funds should be used for the itemized purposes. Otherwise, the City argues, the legislature in the last paragraph of § 390.8 would not have limited expenditures for the purposes set out in subsections 2 and 3 to a maximum of twenty-five percent of the total meter income. Obviously, any amounts required for such purposes over the limit imposed would necessarily be paid from other funds. Defendant-City thus argues the intent of the legislature in § 390.8 was not to make the parking revenue funds the sole source of the payment of enforcement and other costs set forth in subsections 1, 2 and 3, but to limit the amount of such revenues which could be spent for these purposes, in

order to require a city to allocate its meter revenues to the acquisition of off-street parking.

Plaintiffs contend there is no issue in this case relating to the twenty-five percent limitation. They maintain legislative intent is properly derived from subsection 5 (cities may pledge revenue funds "not required for the payment of costs under subsections 1, 2 and 3 hereof to the payment of [revenue] bonds") and the last paragraph of § 390.8 ("All revenues * * * not required for the payment of costs under subsections 1, 2 and 3 hereof shall be expended for the acquisition" of parking lots and off-street parking areas).

■ We have found no cases construing § 390.8 or a similar statute. Nor have we been helped in ascertaining legislative intent by tracing the antecedents of chapter 390. Our search for such intent is limited by what the legislature said, rather than what it should or might have said. Rule 344(f)(13), R.C.P.

■ While the question is close, we conclude from all of the language of this and related statutes the legislature intended parking revenues to be used for the purposes specified in § 390.8, subsections 1, 2 and 3, at least until the twenty-five percent limitation with respect to subsections 2 and 3 is reached, before pledging parking funds to the retirement of revenue bonds issued pursuant to chapter 390, The Code.

■ As a second line of defense the City argues it is proper to use revenue bond financing, road use tax funds and regular tax funds jointly to operate or finance a project and the use of funds from tax sources does not invalidate the revenue bonds. They cite as authority State Board of Regents v. Lindquist, 188 N.W.2d 320 (Iowa 1971); Webster Realty Company v. City of Fort Dodge, 174 N.W.2d 413 (Iowa 1970); Frost v. State, 172 N.W.2d 575 (Iowa 1969); and Wickey v. Muscatine County, 242 Iowa 272, 46 N.W.2d 32

(1951). But in each of those cases there was a specific statutory authorization to employ other than revenue funds to supplement the financing or operation of the project. But here no comparable statutue relating to revenue bonds for a parking facility supports the City's position. We are not persuaded this controversy may be determined on the authority of the cited cases.

Payment of enforcement costs from the general fund necessarily uses tax funds for an expense statutorily charged to parking revenues. Indirectly, tax monies thus generate funds to pay off revenue bonds, a violation of § 390.9, The Code. To this extent, the City's financing plan must fail.

IV. *Was the injunctive relief decreed by trial court appropriate?*

Plaintiffs in this litigation are Iowa City residents and taxpayers. They own automobiles and use the City's parking facilities. Their right to seek injunctive relief is undisputed. See Patton v. Independent School Dist. of Coggon, 242 Iowa 941, 48 N.W.2d 803 (1951).

■ An injunctive decree should ordinarily conform to the requirements of the particular case and should not go beyond those requirements. 42 Am.Jur.2d, Injunctions § 297, pp. 1097–98.

■ Nor will equity attempt by injunction to substitute its own discretion for that of public officials in matters belonging to their proper jurisdiction. 42 Am. Jur.2d, Injunctions § 175, pp. 941–944; 43 C.J.S. Injunctions § 108(b), pp. 616–617; see Board of Dir. of Ind. Sch. Dist. of Waterloo v. Green, 259 Iowa 1260, 147 N.W.2d 854 (1967).

■ A municipal corporation and its officers ordinarily will not be restrained because their action is unwise, extravagant or a mistake of judgment, but only where the action complained of is illegal, fraudulent, or clearly oppressive. Scott v. City

of Waterloo, 223 Iowa 1169, 1174–1175, 274 N.W. 897, 900–901 (1937); 42 Am. Jur.2d, Injunctions § 180, p. 950; 43 C.J.S. Injunctions § 111, pp. 633–636.

In the case sub judice trial court enjoined sale and delivery of the revenue bonds until the alleged illegal payments from the general fund had terminated. It thus granted plaintiffs the broad relief prayed for in division I of their petition rather than merely restraining the specific payments from the general fund as prayed in division II. In this we hold trial court went too far.

Plaintiffs argue certain language of the bond-authorizing Ordinance 2632 could be construed as not requiring enforcement costs to be paid from the parking fund. Ordinance 2632 plainly provides the principal and interest on the bonds in question shall be paid solely and only from the future net revenues of the parking system, and under no circumstances shall the City be liable in the event that revenue falls short. The enactment further provided the income and revenues of the on-street parking facilities should be used to pay the aggregate of all operation, maintenance, traffic control expenses, collection enforcement and cost of additional on-street parking meters and facilities, which costs should not exceed twenty-five percent of the income and revenues of the on-street parking facilities. We are not persuaded the ordinance is impermissibly ambiguous or that in implementing the enactment the City will violate § 390.8, The Code, as herein construed.

The decree additionally provides, "Said revenue bonds (Ordinance 2632) shall not be sold or delivered until the balance due on revenue bonds issued under Ordinance 2537 in the amount of $120,000.00 and which are payable from the net revenues of the municipal system of public motor vehicle parking facilities are paid or in the alternative Section 23.17 will become applicable and a supplemental decree can issue from the Court."

Plaintiffs' brief concedes the prior bond ordinance was not an issue in the case below, nor were the rights of the prior bondholders. They further concede the bonds issued under Ordinance 2537 were paid prior to trial. The issue is therefore moot and the injunction unwarranted insofar as it is based on that ground.

Plaintiffs pled the ordinance was invalid because it provided for the payment of the bonds from revenues other than the parking facility to be constructed, contrary to § 23.17, The Code. We interpret § 23.17, The Code, as a general statute permitting a municipality to issue revenue bonds " * * * the principal and interest of which are to be paid solely from revenue derived from the operations of the project for which such bonds are issued * * *" notwithstanding existence of other unmatured revenue bonds, unless payment of the interest and principal of such bonds would be impaired. Cf. Summey v. City of Ames, 251 Iowa 1199, 104 N.W.2d 617 (1960).

The plain intent of the statute is to authorize successive bond issues, not to limit the source of bond payment. In any event, § 390.9, a special statute bearing directly on the point, would be controlling if there were a conflict between the provisions of that section and § 23.17. Llewellyn v. Iowa State Commmerce Commission, Iowa, 200 N.W.2d 881, 884 (1972). We construe §§ 390.1, 390.8, and 390.9 to mean the existing and future income from the entire parking system may be pledged to retire the bonds authorized by Ordinance 2632.

That portion of trial court's decree restraining the sale and delivery of bonds authorized by Ordinance 2632 is nullified. Upon remand trial court shall enter decree in conformance herewith. The City shall only be restrained from paying meter enforcement costs from any funds other than parking revenues, while any of the bonds authorized by Ordinance 2632 remain outstanding and unpaid.

Costs on this appeal are taxed one-half to the City and one-half to plaintiffs.

The case is modified in part, reversed in part, and remanded with directions.

Modified in part, reversed in part, and remanded with directions.

MOORE, C. J., and MASON and HARRIS, JJ., concur.

LeGRAND, J., concurs in result.